[Civ. No. 136. Third Appellate District.—May 29, 1906.]

MADERA RAILWAY COMPANY, Respondent, v. RAYMOND GRANITE COMPANY, Appellant, and COUNTY OF MADERA, Respondent.

EMINENT DOMAIN—CONDEMNATION OF RIGHT OF WAY FOR RAILROAD—PUBLIC USE—PRESUMPTION.—The right of eminent domain exists in behalf of a steam railroad company to condemn a right of way therefor, which must be presumed to be a public use; and the burden of proving the contrary is upon the defendant.

ID.—QUESTION OF PUBLIC USE—SPECIAL AND GENERAL STATUTES—EVIDENCE—POWER OF COURTS.—Railroads established by special act of the legislature concern the public interest as matter of legal judgment; but, where the public use is declared by general statute, connecting many objects thus designated, it may be shown by the owner of the land, by extrinsic evidence, that the use is in fact private; and the courts may determine from all the circum-

stances whether or not in the particular case the purpose is a public use.

ID.—NECESSITY FOR TAKING—BURDEN OF PROOF.—Under section 1241 of the Code of Civil Procedure, providing that ''before property can be taken, it must appear: 1. That the use to which it is applied is a use authorized by law; 2. That the taking is necessary to such use''—the burden of proof is upon the plaintiff to show that the taking is necessary to the public use.

ID.—EXTENT OF PUBLIC USE—COMMON AND LOCAL BENEFITS.—The public use required need not be of the whole state, or any considerable portion of it, but the use and benefit must be in common, not to particular individuals. Every public use is in more or less degree local, and benefits a particular section more than others. This is true of railroads, as well as of ordinary highways.

ID.—LENGTH OF RAILROADS—SHORT BRANCH.—Neither the length of the road nor the fact that it is a short branch or spur bears any necessary relation to the question of public use, except possibly as a circumstance bearing upon the alleged fact that the road is solely for the private use of plaintiff. Short roads as connecting links between independent railroad systems, or as branches and feeders to established systems, are often necessary, and fall within the general rules governing condemnation as completely as main lines of road. It is the public purpose that is to govern, and not the length of the road, or the manner of its connection with another road or roads.

ID.—CONSTRUCTION OF CODE—ARTICLES OF INCORPORATION—ROAD LESS THAN ONE MILE—EVIDENCE.—Section 468 of the Civil Code requiring a railroad corporation after beginning the construction of its road to complete and operate at least five miles thereof each year, until it is completed, is not to be construed as limiting the right to construct a road to one less than five miles in length, but only as requiring a compliance with the statute when the road is five miles long or more. The articles of incorporation of the plaintiff railroad showing that it is less than one mile in length are not for that reason inadmissible in evidence.

ID.—LONGITUDINAL RIGHT OF WAY ON PUBLIC ROADS—LEGISLATIVE GRANT.—Whatever the rule might be otherwise, the legislative grant to railroads in this state to construct their roads across, along or upon any avenue or highway, on condition of restoring the same to its former state of usefulness as near as may be, or so that the railroad shall not impair the usefulness or injure its franchise, authorizes the appropriation of a highway longitudinally.

ID.—INCORPORATION—GOOD FAITH OF CORPORATORS—COLLATERAL ATTACK.—The incorporation of the plaintiff having been proved and conceded, it can be directly assailed only by proceedings in *quo*

*warranto;* and the good faith of the corporators is not the subject of collateral attack to affect the validity of its corporate existence, or its right to exercise the power of eminent domain for a public use. If the use is shown to be private, condemnation will be refused, regardless of the general right of the corporation to condemn by virtue of its corporate existence.

ID.—FRANCHISE GRANTED TO GRANITE COMPANY—INJUNCTION—WAIVER —NEW FRANCHISE—TRANSFER TO PLAINTIFF NOT APPLICABLE.— Where a franchise to construct a railroad along a highway was granted by the supervisors of the county to a granite company not organized as a railroad company, and it was enjoined from exercising it, and a new franchise was granted to plaintiff railroad company to construct its road along the same highway, and the granite company waived its franchise, section 490 of the Civil Code, regulating transfers of franchises from one railroad company to another, is inapplicable; and the county cannot complain that plaintiff is violating the rights of the granite company.

ID.—JOINDER OF STOCKHOLDERS OF GRANITE COMPANY IN RAILROAD COMPANY—MARKETING OF PRODUCT.—The fact that the stockholders of the granite company also became stockholders in the railway company, plaintiff, and that the incorporation was designed to enable the granite company to market its product does not prove a private use, nor render the use less public, where the road is open to the public, to be used upon equal terms by all patrons.

ID.—CORPORATION FORMED TO BUILD BRANCH ROAD—RIGHT OF CONDEMNATION.—Our statute does not define "steam railroads," nor make a distinction between main lines and branches. A corporation may be formed to build a particular road which will connect with another road and become a branch thereof; and such corporation has the right to condemn land for its right of way.

ID.—CONFLICTING EVIDENCE—SUPPORT OF FINDINGS.—Where the evidence was conflicting as to whether the construction of the road of plaintiff along the highway practically destroyed its usefulness to the defendant granite company as an abutting owner and user thereof, or as to whether the use of the road by plaintiff was public or private, the findings in favor of the plaintiff will not be disturbed upon appeal.

ID.—DEPOSITION OF SECRETARY OF PLAINTIFF TAKEN BY DEFENDANT— COPIES OF CORPORATE RECORDS—EVIDENCE FOR PLAINTIFF.—A deposition of the secretary of plaintiff corporation, taken by defendant before the trial, in which were incorporated copies of the records called for by the defendant, may be read in evidence by plaintiff; and such copies are as admissible for plaintiff as any other part of the deposition; and it cannot be objected that they were not the best evidence, and that the original records should be produced.

Id.—Demand for All Books and Papers.—A demand made by the defendant for all the books and papers of the corporation was unauthorized; and where there was no sufficient showing by affidavit or otherwise that records and papers not appearing in the deposition were material to defendant's defense, and the general purpose which the records were intended to establish appeared in the course of the trial, the omission of other records and papers cannot affect the validity of the deposition.

Id.—Deposition Subject to Objections—Incompetent Evidence—Judgment of Witness.—The deposition may be read by either party subject to all legal objections except the form of his interrogatory; and a question calling for the "deliberate judgment" of a witness as to a matter, and not the facts as to the matter, was properly excluded as immaterial and incompetent.

Id.—Incompetent Evidence as to Damage.—Upon the question of damages to defendant company for the taking of the right of way, evidence of the condition in which the highway was left by plaintiff's grading at points other than along the land of defendant company, over which the right of way was sought to be condemned, for the purpose of enhancing the damages, was properly excluded.

Id.—Evidence of Damages in Previous Condemnation of Private Road—Limitation—Harmless Rulings.—It was not error to admit testimony for plaintiff to show the damages allowed in the previous condemnation suit for a private road, along which the right of way was sought to be condemned, where it was limited to the value of the land upon condition that the value had not changed, the court holding that a different element entered into the matter where the taking was for a railroad, and the damage might be different. Under the limitation made by the court, the testimony worked no injury to defendant.

APPEAL from a judgment of the Superior Court of Madera County, and from an order denying a new trial. L. W. Fulkerth, Judge presiding.

The facts are stated in the opinion of the court.

Robert L. Hargrove, for Appellant.

C. H. Oatman, and T. C. West, for Madera Railway Company, Respondent.

R. R. Fowler, District Attorney for Madera County, Respondent.

CHIPMAN, P. J.—Condemnation of land for right of way.

The complaint alleges the due incorporation of plaintiff under the laws of this state "for the purpose, among other things, of constructing, owning, maintaining and operating a single track railway of a standard gauge, to be operated by steam, for the carrying of passengers and freight thereon and thereover for hire, commencing at 'Curtis Station' situated at the intersection of the branch of the Southern Pacific Railroad known as Knowles Spur, at the crossing of the 'McLennan road' in Section No. 22, Township 8 South, Range 19 East, M. D. B. & M.; thence in a southerly direction along said McLennan road to 'McGowan Station,' situated about eight hundred feet south of Madera Granite Company's quarry in the southeast quarter of Section 27," said township and range. Said complaint describes with particularity the strip of land required, as shown on a map attached to the complaint and is marked "exhibit A," copy of which is attached to the transcript. The area of land sought to be condemned is sixty-two one-hundredths acres, and "the same does not include the whole but is only a part of an entire tract of land," and is situated in Madera county; that defendant company "is the owner of an interest in said tract of land, hereinbefore particularly described and also the larger tract of land of which it is a part." That the defendant county "is the owner of an easement over said tract of land and the same is now used as a highway for vehicles and pedestrians to pass over. That the said tract of land herein sought to be taken consists of the west half of said highway and will not in any manner impede or interfere with the use of said highway." It is also averred that "the taking of said strip of land is for a more necessary public use than that to which it has already been appropriated" and that the "said railroad of plaintiff has been located in the manner which will be the most compatible with the greatest public good and the least private injury," and "that the taking of said strip of land is for a public use, to wit, the right of way of said railroad of plaintiff."

Defendant county made no answer and its default was duly entered. Defendant company answered, denying specifically that the plaintiff was incorporated for the purposes alleged and also denied practically all the averments of the com-

plaint. Avers that plaintiff was incorporated "by the officers and agents of the Madera Granite Company for the convenience, use and benefit of said Madera Granite Company," a corporation operating a granite quarry near the terminus of plaintiff's said railroad; that said railroad commences "at a fictitious place called 'Curtis Station' and terminates on the private land of said Madera Granite Company less than one mile distant; that there are no such stations as 'Curtis' or 'McGowan' stations"; that said Madera Granite Company "is and has been for a long time extracting rock from its private land, marked McGowan Station, for market, and is and for a long time has been hauling the said rock by wagons and teams over said McLennan road to the said railroad of the Southern Pacific Company, and from there transports the same over said Southern Pacific's railroad to market"; that plaintiff was incorporated for the sole purpose of taking advantage of the law of eminent domain and of commencing this suit for the private benefit of the Madera Granite Company; that said railroad does not terminate or commence at public places; that its termini are on private grounds, and so situated as to be of no benefit to the public; that defendant company owns all the land about the place called Curtis Station and the station called McGowan is upon lands of plaintiff, and no public roads lead to said station except said McLennan road, which terminates at that station; that "plaintiff has no passenger cars, locomotives or cars at all, nor does it intend to operate any to carry any freight or passengers for the convenience of the public or otherwise"; that the purpose of building said railroad was to transport the rock of said quarry of the Madera Granite Company to the Southern Pacific's railroad; that plaintiff has made high fills and grades upon said strip of land in such manner as to prevent defendant from crossing said highway to and from its adjoining lands and to prevent the use of the west half of said highway for teams and wagons.

The court made findings substantially as alleged in the complaint; that defendant company is the owner in fee of the land sought to be taken, subject to the easement thereover for the McLennan Private Road, which said easement is owned

by defendant county and the same is a public highway; that the interest of defendant company in said strip of land is of the value of $125, and the damage to the contiguous land of defendant company is the sum of $500. The court further found against defendant company on the specific facts alleged in defense. Thereupon the court made its preliminary order and judgment of condemnation which was thereafter followed by its final judgment of condemnation. From this latter judgment and from the order denying its motion for a new trial, defendant company appeals.

The transcript comprises about five hundred pages, appellant's brief about one hundred and fifty pages and respondent's brief half the number. Obviously some way must be found to bring into reasonable compass the salient questions of law and fact before us.

There are certain principles of law governing condemnation cases, discussed by the respective parties which may as well be disposed of here as elsewhere.

1. "The right of eminent domain may be exercised in behalf of the following public uses: 4. . . . steam . . . railroads. . . ." (Code Civ. Proc., sec. 1238.) Counsel for respondent contends that this declaration of the legislature raises the presumption that the railroad in controversy must be presumed to be a public use and that the burden of proving the contrary is upon the defendant. It was held in *Napa Valley R. R. Co.* v. *Napa County,* 30 Cal. 435, that "railroads concern the public interest as matter of legal judgment—and however that conclusion be opposed to the fact in the case at bar makes no difference, the action of the legislature on the question not being open to review by the judicial department of the government." So held, also, in *Stockton etc. R. R. Co.* v. *City of Stockton,* 41 Cal. 147. In both these cases, however, the railroads in question were authorized by special act of the legislature, and it would have been an unwarranted interference with legislative discretion for the courts to inquire into the policy or wisdom of the legislature in declaring that the building of these particular roads concerned the public interest.

The early case of *Contra Costa R. Co.* v. *Moss,* 23 Cal. 324, is of this class, also. Another class of cases is found in our reports, of which *County of San Mateo* v. *Coburn,* 130 Cal.

631, [63 Pac. 78, 621], is an example. There the board of supervisors had determined the necessity of opening a public road by a certain route, and later found it necessary to bring the action to condemn a right of way over a portion of the land required for the road. "Roads" are among the public uses declared by the code section above cited. And it was held that the court could not inquire into the necessity for the highway, its location and extent, as these were matters of a political or legislative character. But in that case it was shown that the statute (Pol. Code, sec. 2681 et seq.) "has established a tribunal for determining these questions. . . . If this tribunal proceeds in accordance with the provisions of these sections, it acquired jurisdiction to determine these questions, and its determination is not subject to collateral attack. In a proceeding thereafter by the public to condemn a right of way for this public road the court is not authorized to review the action of the board of supervisors in determining these questions." (Citing *Wulzen* v. *Board of Supervisors,* 101 Cal. 15, [40 Am. St. Rep. 17, 35 Pac. 353]; *County of Siskiyou* v. *Gamlich,* 110 Cal. 94, [42 Pac. 468]; Lewis on Eminent Domain, secs. 238, 239; see, also, *Pool* v. *Simmons,* 134 Cal. 621, [66 Pac. 872].) Where, however, the public use is declared by general statute, enumerating the many objects that are thus designated, the courts are not precluded from determining from all the circumstances whether or not in the particular case the purpose is a public use. (*Lindley I. Co.* v. *Mehrtens,* 97 Cal. 676, [32 Pac. 802].) *Consolidated Channel Co.* v. *Central Pac. R. R. Co.,* 51 Cal. 269, was such a case. Plaintiff sought by condemnation to procure certain lands to serve as a site for a bedrock flume to carry the dirt and gravel from its mining claims; and also as a place of deposit for the tailings of its mine. The statute (Code Civ. Proc., sec. 1238) gave the right of eminent domain in behalf of flumes among other declared public uses. A demurrer to the complaint was sustained. It was contended that the legislative declaration that flumes are public uses is conclusive upon the judicial department of the government. The court said: "Without doubt it is the general rule that where any doubt exists whether the use to which the property is proposed to be devoted is of a public or private character, it is a matter to be determined

by the legislature, and the courts will not undertake to disturb its judgment in this regard. This question was fully discussed and the doctrine established in the case of *Stockton etc. R. R. Co.* v. *City of Stockton,* 41 Cal. 147. But in the same case an exception to the general rule is recognized. It is said: 'A case might, indeed, be presented in which it might appear, beyond the possibility of question, that a tax had been imposed, or the property of a citizen had been taken for a use or purpose in no sense public; or, in the language of Chancellor Walworth, 5 Paine, 159, "where there was no foundation for a pretense that the public was to be benefited thereby"; and in such case it would be our duty to interfere and offer a relief.' " In discussing the general rule it was said in *County of San Mateo* v. *Coburn,* 130 Cal. 631, [63 Pac. 76, 621] : "It is not to be held, however, that the mere declaration by the legislature that the object for which private property may be taken is a public use will preclude the owner from contesting the right to deprive him of his property. If it is sought to condemn the property for a use which is evidently private, or to accomplish some purpose which is not of a public character, courts will disregard the legislative declaration that such use is public. . . . If it can be shown by extrinsic evidence that the end sought to be accomplished is not of a public character, but is solely for private purposes, the condemnation will be denied as being in excess of the legislative power." (Citing *Matter of Niagara Falls etc. Ry. Co.,* 108 N. Y. 375, [15 N. E. 429].)

While it is true that when the uses are in fact public, the necessity or expediency of taking private property for such uses, the extent to which the right may be delegated and the instrumentalities to be used, are questions belonging to the political and legislative branches of the government, nevertheless the question whether the uses are in fact public, justifying the taking *in invitum* of private property therefor, is a judicial question to be determined by the courts. (Lewis on Eminent Domain, sec. 158.)

Our statute would seem to set the question at rest. Section 1241 of the Code of Civil Procedure declares that: "Before property can be taken it must appear: 1. That the use to which it is to be applied is a use authorized by law; 2. That the taking is necessary to such use." As the necessity

for the taking of the particular property must be made to appear by proof, at least *prima facie*, the burden is upon the plaintiff to show "that the taking is necessary to such use." (Lewis on Eminent Domain, sec. 426.)

It was said in *Lindsay I. Co.* v. *Mehrtens*, 97 Cal. 676, [32 Pac. 802] : "Whoever, under the claim of an agency of the state, would deprive the owner of any of his property by virtue of the exercise of eminent domain, must show not only that the use for which he seeks to appropriate it is a public use, but also that the legislature has authorized the taking of property for that particular use, and in the mode in which he is seeking to appropriate it." Unquestionably the owner of the land sought to be condemned may show that the use and its purpose are private and not public. The existence of the corporation plaintiff proves no more than would the existence of a natural person seeking to condemn under authority of the statute.

2. It was said in *County of Madera* v. *Raymond Granite Co.*, 139 Cal. 128, [72 Pac. 915], approving the doctrine laid down in *Sherman* v. *Buick*, 32 Cal. 253, [91 Am. Dec. 577] : "Whether a way be public or private does not depend on the number of people who use it, but upon the fact that everyone may lawfully use it who has occusion." Mr. Lewis states the rule as follows. It is not necessary that the entire community, or any considerable portion of it, should directly participate in the benefits to be derived from the property taken." (Lewis on Eminent Domain, sec. 161.) The public use required, need not be of the whole state or any considerable portion of it, but the use and benefit must be in common, not to particular individuals. Every public use is in more or less degree local and benefits a particular section more than others. This is true of railroads, as well as of ordinary highways. The cases are numerous sustaining this rule. (See notes to Lewis on Eminent Domain, 161. See, also, *Lindley I. Co.* v. *Mehrtens*, 97 Cal. 676, [32 Pac. 802].)

3. Neither the length of the road nor the fact that it is a branch or spur bears any necessary relation to the question of public use or of the public interest to be subserved by it, except possibly as a circumstance bearing upon the alleged fact that the road is solely for the private use of plaintiff. (*Contra Costa R. R. Co.* v. *Moss*, 23 Cal. 324.) Short roads

as connecting links between independent railroad systems, or as branches and feeders to established systems, are often necessary and fall within the general rules governing condemnation quite as completely as main lines of road. It is the public purpose that is to govern and not the length of the road, whether it is a road connecting two established roads or a branch of an established road, or a branch connecting with another branch road.

Appellant cites section 468 of the Civil Code and claims among its errors of law that the articles of incorporation of plaintiff were inadmissible because the above section provides that commercial railroads shall be at least five miles long, and in this case it was impossible to comply, as the road is less than one mile in length. This section requires every railroad corporation, every year after it has begun construction of its road, "to complete and put in full operation at least five miles of its road, until the same is fully completed," failing in which "the right to extend its road beyond the point then completed is forfeited." This section is not to be construed as limiting the right to construct a road to one not less than five miles in length. The most that could be claimed for the section is that when the road is five miles long or more, the corporation must comply with the statute.

4. The meaning of that part of subdivision 3, section 1241 of the Code of Civil Procedure, is called in question, reading: "If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use." The point has references to the McLennan road over which plaintiff seeks a right of way, and it is contended by appellant that only by direct and specific legislative enactment and authority can property be taken which is already applied to a public use; that the question whether or not the intended use is "a more necessary public use," is a question for the legislature to decide and not the courts. We are referred to a discussion of the question by Mr. Lewis in his work on Eminent Domain, sections 262-276. Conceding the general doctrine to be as illustrated by Mr. Lewis, the legislature of this state has specifically and directly authorized railroad corporations to "construct their roads across, along or upon . . . any . . . avenue or highway . . .; but the corporation shall restore the . . . road . . . high-

way . . . thus intersected, to its former state of usefulness
as near as may be, or so that the railroad shall not unneces-
sarily impair its usefulness or injure its franchise.'' (*Ar-
cata* v. *Arcata etc. R. R. Co.*, 92 Cal. 639, [28 Pac. 676];
*Southern Pacific R. R. Co.* v. *Ferris*, 93 Cal. 263, [28 Pac.
828]; see, also, *Montgomery* v. *Santa Ana etc. Ry. Co.*, 104
Cal. 186, [43 Am. St. Rep. 89, 37 Pac. 786].) Mr. Lewis
(section 270) cites *Springfield* v. *Connecticut River R. R. Co.*,
4 Cush. 63, to the effect that authority to construct a rail-
road between certain termini does not authorize the appro-
priation of a highway longitudinally. He adds, however,
that ''the legislature may, of course, authorize the condemna-
tion of additional easements in public highways, as for rail-
roads, electric lines, etc.'' This latter authority is clearly
given by our statute.

5. Some question arose in the case as to the right of the
defendant company to inquire into the good faith of the
promoters of plaintiff company in forming the corporation
and to show that it was in fact not a *bona fide* corporation.
So far as we can discover, defendant company was permitted
to introduce such evidence as it had which bore upon the
question, and if it was error to admit it, appellant cannot
complain. Possibly it was admitted upon the theory that it
bore somewhat upon the question that the use, as claimed by
appellant, was in fact private. Appellant states distinctly:
''We do not attack Madera Railroad Company's articles as
a corporation,'' and we may accept this declaration as con-
clusive. We do not think, however, that the good faith of
the corporators in forming the corporation can be called in
question collaterally in this proceeding so as to in any wise
affect the validity of the corporate existence. The dissolu-
tion of the corporation or the forfeiture of its franchise can
only be accomplished by *quo warranto* proceedings, as was
the case of *People* v. *Pittsburgh R. R. Co.*, 53 Cal. 694; or
under the provisions of the Code of Civil Procedure, section
803 et seq. (*People* v. *Dashaway Assn.*, 84 Cal. 114, [24 Pac.
277].) For a discussion of the right to collaterally attack the
validity of the corporation charter, see *Kansas etc. Ry. Co.* v.
*Northwestern etc. Coal Co.*, 161 Mo. 288, [84 Am. St. Rep.
717, 61 S. W. 684]. Whether or not the franchise will be
taken away or the exercise of corporate acts be enjoined, upon

a given state of facts, are questions not necessarily determinative of the question here, namely, whether or not the corporation is in fact seeking only by means of the right of eminent domain to enjoy the property sought to be taken, purely as a private use and not in the interest of the public. The corporation may have a valid existence and may successfully resist all efforts to revoke its franchise, and yet the court may inquire whether the particular use involved in the condemnation is public or private. If the use be private, with which the public have no concern, and in which it has no interest, condemnation will be refused, regardless of the general right of the corporation to condemn by virtue of its corporate existence.

In view of the foregoing principles it remains to notice the facts developed by the evidence, and certain questions connected therewith and certain assignments of error.

It appears that by ordinance 74 of the supervisors of Madera county, the Madera Granite Company was authorized to build a railroad along the McLennan highway, and that company commenced the work of construction but was enjoined from its further prosecution, or using this highway for railroad purposes. Subsequently, to wit, June 6, 1903, plaintiff company was duly incorporated, and thereafter it petitioned the board of supervisors for a franchise to construct and operate a railroad along the McLennan highway, which was accompanied by a waiver on the part of Madera Granite Company of its franchise granted by ordinance 74, and on July 11, 1903, ordinance 86 was passed by said board of supervisors, granting the petition. It is now claimed that the Madera Granite Company did not convey to plaintiff its right of way granted it by ordinance 74 or any of its railroad property and that the property, under section 494 of the Civil Code, still belongs to the Granite Company, and hence plaintiff has no standing in court.

Section 494 of the Civil Code relates exclusively to sales and transfers of property of one railroad company to another railroad company. The Madera Granite Company was not organized as a railroad corporation, and had no authority by its charter to engage in railroad building, and probably for that reason the court enjoined its attempt to exercise the powers of a railroad corporation. However this may be, the

section has no application to the facts, and hence we cannot see what cause defendant has for complaining that plaintiff is violating (if it is doing so) the private rights of the Granite Company.

Appellant contended at the trial for the right to introduce evidence showing that plaintiff, in constructing its road along McLennan highway, practically destroyed its usefulness to defendant company as an abutting owner and user of the highway. The trial court admitted the evidence offered in support of this defense and in rebuttal thereof findings were made upon the issue favorable to plaintiff. The evidence was conflicting, with sufficient to support the findings.

There was considerable evidence tending to the point that the main object in building the road was to enable the owners of the Madera Granite Company to market its product. Circumstances may arise where it becomes of public benefit for branch railroads to be built primarily to reach some important industry about to be inaugurated, or that is struggling along under difficulties for want of transportation facilities. The fact that the advantage of such road inures to a particular individual or a class of individuals will not render the use any the less public. And the fact that the stockholders of the Madera Granite Company were also stockholders of plaintiff company does not prove that the contemplated use is a private use. (*Lindley I. Co.* v. *Mehrtens*, 97 Cal. 676, [32 Pac. 802].) The doctrine, as we believe it to be, is well stated in *Ulmer* v. *Lime Rock R. R. Co.*, 98 Me. 581, [57 Atl. 1001]. That was a condemnation suit to condemn a right of way over certain land for a branch road to a lime quarry. The court said: "The mere fact that the primary purpose of such a branch is to accommodate a particular private business enterprise is by no means a controlling test. The character of the use, whether public or private, is determined by the extent of the right of the public to its use and not to the extent to which that right is or may be exercised. If it is a public way in fact, it is not material but few persons enjoy it. When such a branch track is first constructed, and the right of way necessary therefor is taken, it may, in fact, be used only for the business of the plant to which it is constructed, because at that time no other business enterprise may exist in that vicinity to furnish freight

for transportation, but in the future other enterprises may spring up, either upon the line or the extension thereof, so that a branch track which in the first instance is primarily constructed for the accommodation of one may become of equal accommodation, benefit and use to others.

"The tests decisive of this question as to whether a branch track of this character is to be constructed and operated for public or private purposes, deducible from the great weight of authority upon the question in this country, are these: If the track is to be open to the public, to be used upon equal terms by all who may at any time have occasion to use it, so that all persons who have occasion to do so can demand that they be served without discrimination, not merely by permission but as of right, and if the track is subject to governmental control, under general laws, as are the main lines of a railroad, then the use is a public one and the legislature may grant the power to exercise the right of eminent domain to a corporation which is to construct and operate such track; and if the purpose of the railroad corporation in building any particular branch track is to operate the same in conformity with these requirements, then the power granted by the legislature may be exercised in that particular case.

"This is in accordance with the almost unbroken line of decisions of the appellate courts of the various states of this country, a brief quotation from a few of which may be advantageous." (Citing many cases.)

Our statute does not define what is meant by "steam railroads," nor does it make any distinction between main lines and branches. A corporation may be formed to build a particular road which is to connect with another road and become a branch thereof. Such a corporation would have the right to condemn land for its right of way. Mr. Lewis says: "There appears to be no reason why lateral roads should not be constructed, if they are required to serve the public, as occasion requires." (Lewis on Eminent Domain, sec. 171.)

There was evidence that the Madera Granite Company was not the only person and its granite enterprise the only industry that might be served by this branch road. The defendant company employed a large number of men, as did the Madera Granite Company. There was evidence that a considerable business in marketing wood for fuel might be

done by this road; there was evidence also that a grazing country surrounded this road and shipments of cattle might be made by this road; that the road passed through granite land which would, with this branch road, be profitable to work; that it would be an additional convenience to the neighborhood generally.

It is made the duty by law for the railroad company to operate its cars ''for the transportation of all such passengers and property as . . . offer or is offered for transportation,'' etc. (Civ. Code, sec. 481) ; and ''in case of refusal . . . to take and transport any passenger or property or to deliver the same . . . must pay the party aggrieved all damages,'' etc. (Civ. Code, sec. 482.) Failure to operate its road as provided by the act of April 15, 1880 (Stats. 1880, p. 43), makes subject to forfeiture the right of the corporation or the individual owning the road to operate it. Section 17, article XII, of the constitution, provides, among other things: ''Every railroad company shall have the right with its road to intersect, connect with or cross any other railroad, and shall receive and transport each the other's passengers, tonnage and cars, without delay or discrimination.'' Organized as plaintiff is to do a general carrier business, it can be compelled to exercise its assumed powers and duties. Appellant contends that the Knowles switch or spur, with which the branch in question is to connect, is no part of the main line of the Southern Pacific Company; that it is a branch of the Raymond branch of the Southern Pacific Company, and is but a switch running to defendant company's quarry. There is evidence that the Knowles spur was built by the Southern Pacific Company; that the right of way was obtained by defendant company and conveyed to the Southern Pacific Company for a consideration paid by that company in switching charges; that it was constructed in 1889, and has been in use ever since by the Southern Pacific Company. Witness Knowles testified: ''The Knowles spur is their track.''

''Q. Mr. Knowles, is there a regular train service to Knowles spur? A. No, sir; there is no train service; only freight service, that's all. They carry passengers to Knowles spur in freight or box cars or whatever they have to take passengers to and from our store at Knowles spur.

"Q. Do they run regular trains on that spur? A. Well, not regular, no, sir. Not every day. If they have freight to get or take, they run there.

"Q. Do you always notify them when they come down there (meaning Knowles spur)? A. Not always, they come there (meaning Knowles spur) often without being notified.

"Q. But do they run regular trains? A. They are supposed to come there whenever we have anything to ship; if there is anyone to go, they never come after them. . . . Knowles Station on the Southern Pacific Map is where the Knowles Spur starts from the Southern Pacific line."

In the answer of the defendant company this Knowles spur is referred to as "the railroad of the Southern Pacific Company" and the road in question is referred to as commencing "at the said Southern Pacific railroad," and that the sole purpose of said Madera Railroad is to carry the rock of the Madera Granite Company from McGowan Station "to the said railroad of the Southern Pacific Company on cars prepared by the said Southern Pacific Company for that purpose." There was much evidence *pro* and *con* the question whether the use was private or public—sufficient, we think, to have supported a finding either way by the court. In such condition of the record we must uphold the view of the evidence taken by the court.

That plaintiff company has now no cars with which to operate the road; that it may or intends to arrange with the Southern Pacific Company to operate the road with its cars; that at the present time little or no business will come to the road except from the Madera Granite Company; that the present or prospective volume of business for the road from all sources would not justify its construction; that the owners, agents and attorneys of the Madera Granite Company were active participants in organizing plaintiff company—are facts having some bearing, perhaps, upon the question of the nature of the use, but are by no means conclusive. Legitimate railroad enterprises are often projected into regions of little present profit, and ultimately prove unfortunate investments by lack of anticipated business. But they were nevertheless public in their objects; and we have seen that a public use may be shown where only a single enterprise is primarily to be benefited, and that the fact that the corporators in another

company which is the chief beneficiary are also corporators of the railroad company is not at all conclusive as to the character of the use.

The point is much urged that the Madera Granite Company and plaintiff were composed of the same persons, seeking thus not only to discredit the plaintiff company, but also the good faith and objects of its corporators. Sufficient to say, as was said in *Kansas etc. Ry. Co.* v. *Northwestern etc. Coal Co.*, 161 Mo. 288, [84 Am. St. Rep. 717, 61 S. W. 684]: "There is nothing in the letter or spirit or policy of the law which prohibits the same persons from forming and conducting two different corporations, one a business and the other a railroad company. . . . The charter of the plaintiff and the laws of this state expressly require the plaintiff to transport persons and freight, and the plaintiff can be compelled by *mandamus* to do so if it refuses. The fact that almost the entire volume of business now in sight for the plaintiff to do will be transportation of coal produced by the Kansas and Texas Coal Company, does not destroy the character of the plaintiff as a railroad company, nor convert it into a private, and not a public railroad; nor does it make the use to which the land sought to be condemned is to be applied any the less a railroad right of way, and therefore a public use." Upon the same general question, see *Oregon Short Line* v. *Postal Tel.*, 111 Fed. 842, [49 C. C. A. 663].

There are numerous errors of law assigned in the exclusion and admission of evidence. Many of them are inconsequential and need not be noticed; others present rulings which, conceding error, were without prejudice to appellant; still others are disposed of by the foregoing discussion.

Exception 2. Before the trial, defendant company took the deposition of R. W. Campbell, secretary of plaintiff, and in the taking called for copies of certain records of the plaintiff company which were produced and incorporated into the deposition. At the trial plaintiff offered this deposition in evidence, and in reading it objection was made to the admission of those record copies as not the best evidence, and defendant also demanded that the originals should be produced, citing section 1000 of the Code of Civil Procedure. Having been introduced by defendant and made part of the deposition taken by it, the copies therein incorporated were

as admissible as any other portions of the deposition. "When a deposition has been once taken, it may be read by either party at any stage of the same action or proceeding, . . . and is then deemed the evidence of the party reading it." (Code Civ. Proc., sec. 2034.) The demand made was substantially for all the books and papers and records of plaintiff, some few of which were specified, many of which were incorporated in the deposition and all of which were at the office of the company in San Francisco, while the trial was going forward at Madera.

There was no sufficient showing by affidavit or otherwise that these records and papers not appearing in the deposition were material to defendant's defense. As was said in *Ex parte Clark,* 126 Cal. 235, [77 Am. St. Rep. 176, 58 Pac. 546], the motion was "in effect a general omnibus order (motion) for the production of all of defendant's (plaintiff's) books, which has always been held to be unauthorized." Besides, the general purpose which the records were intended to establish appeared in many ways in the course of the trial.

Exception 3. During the reading of the deposition, plaintiff objected to a question as immaterial and incompetent, which in fact it was, and the court sustained the objection. Section 2032 of the Code of Civil Procedure provides that "the deposition may be used by either party upon the trial . . . subject to all legal objections," unless the objection be "to the form of an interrogatory," which this was not. It is contended that "plaintiff, offering the deposition, was estopped from objecting to the same." The question called for the "deliberate judgment" of the witness as to a matter, and not the facts as to the matter, and was clearly immaterial and incompetent. The court did not err in its ruling.

Exception 12. Upon the question of defendant company's damage, defendant sought to show the condition in which the McLennan road was left by plaintiff's grading, at points other than along the land of defendant company, over which the right of way was being condemned, for the purpose of enhancing the damage to defendant company. The court sustained the objection to such evidence, and we think, rightly.

Exception 13. Considering all the testimony brought out in connection with the ruling of the court complained of, we

see no error, for defendant had the benefit of all the witness knew on the subject.

Exception 14. It was not error to admit at plaintiff's instance the testimony of the witness, Knowles, on the question of damage given in the condemnation suit when the Mc-Lennan private road was before the court. In admitting the testimony, the court limited it to the value of the land upon condition that it be shown that the value had not changed. Upon the question of damage, the court held that a different element entered into the matter where the taking was for a railroad and the damage might be different. Under the limitation made by the court, the testimony worked no injury to defendant.

Exceptions were taken to certain rulings as violating the law as laid down in *San Diego Land etc. Co. v. Neale*, 78 Cal. 63, [20 Pac. 372]. We cannot see that the court departed materially from the rules established by that case. The judgment and order are affirmed.

Buckles, J., and McLaughlin, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 26, 1906.