[Civ. No. 6979. Fourth Dist. Oct. 31, 1963.]

CITY OF CARLSBAD, Plaintiff and Appellant, v. JAMES B. WIGHT et al., Defendants and Respondents.

Barbara Lang Betts for Plaintiff and Appellant.

Hillyer, Crake & Irwin and William Hillyer for Defendants and Respondents.

BROWN (R.M.), J.*—This appeal originated in a proceeding brought by the City of Carlsbad, a city of the sixth class, appellant herein, to condemn approximately one acre of land located wholly outside its corporate limits and lying within the boundaries of the City of Oceanside for the purpose of relocating thereon a storm drainage canal. The defendants-respondents are James B. Wight and Cora I. Wight, record owners of the real property sought to be condemned, and others whose interests, insofar as this appeal is concerned, are identical with the interests of the Wights. For convenience, the singular word defendant will be used herein.

Prior to trial on the issue of damages there was a preliminary trial at which all other issues, including the issue of the necessity of taking this private property, were tried by the court. The trial court determined that there is no necessity for plaintiff to condemn defendant's real property for the purpose of construction of a drainage canal; and that, by reason of such lack of necessity, plaintiff does not have the implied power of eminent domain insofar as this particular parcel of land is concerned. From the judgment of dismissal subsequently entered plaintiff brought this appeal.

The background facts are these: A portion of the southerly boundary of the City of Oceanside and a portion of the northerly boundary of the plaintiff city lie side by side within the Buena Vista Creek Watershed, in the County of San Diego. The watershed is drained by Buena Vista Creek, which is composed of a main outlet channel and three tributary chan-

---

*Assigned by Chairman of Judicial Council.

nels. The confluence of the tributary channels is located easterly of the cities of Oceanside and Carlsbad. From the point of confluence Buena Vista Creek runs in a westerly direction through a portion of the City of Carlsbad and outlets in Buena Vista Lagoon which, in turn, outlets into the Pacific Ocean. The portion of the flood plain with which we are here concerned lies within the corporate limits of plaintiff and is bounded by El Camino Real to the east, Jefferson Street to the west, the city limits of plaintiff to the north and a Eucalyptus grove to the south. In its journey to the ocean Buena Vista Creek follows a well-defined channel easterly of El Camino Real, but westerly thereof the bed of the natural stream meanders and changes course in times of heavy runoff. Hydraulic studies show that the flow of water at El Camino Real may be estimated at 5,500 cubic feet per second for a 100-year frequency storm and the present capacity at this point is approximately 1,700 cubic feet per second. As a consequence of this inadequacy, the area of the flood plain above described has in the past frequently flooded. The area is now a weed-grown marshland, providing a breeding ground for a large population of mosquitos and gnats.

To the north and outside of the marshy area and within the City of Oceanside defendant owns an acre of land upon which a veterinary hospital was in the process of construction at the time of the commencement of this suit. To the southwest of defendant's property is situate a sewage treatment and pumping station which serves the City of Oceanside. The route of the proposed flood channel will commence at El Camino Real, curve northwesterly to Vista Way, thence westerly parallel with and adjacent to Vista Way, thence curve southwesterly to the Lagoon.

Prior to the commencement of this action, Rildan, Inc., acquired ownership interests in a considerable acreage of the marshland through which the natural channel of Buena Vista Creek now runs. Rildan, Inc., is a developer and plans on reclaiming the marshland, subdividing it, and devoting it to commercial and residential uses, if it can rid itself of Buena Vista Creek. To this end it made gifts to plaintiff of a grant of easement or agreements of a grant of easement for all of the proposed flood channel between El Camino Real and Jefferson Street except the property of defendant, and has agreed to construct the channel at its own expense if plaintiff succeeds in acquiring defendant's property through the exercise of the eminent domain power.

The State of California, Division of Highways, presently plans to construct an interchange at Vista Way Freeway and El Camino Real. The District Engineer of the Division of Highways is of the opinion that construction of a flood channel along the right of way of Vista Way should reduce the cost of freeway construction to the State by an estimated $50,000, which amount he is willing to recommend be the State's contribution in a cooperative drainage project with plaintiff.

We pass lightly over plaintiff's arguments that a storm drainage channel is a public use authorized by law; that a use does not lose its characteristic as public although there may be an incidental private advantage or benefit; and that lawful eminent domain proceedings are not rendered invalid because private persons who will be specially benefited by the improvement pay, or agree to pay, the cost thereof in whole or in part, for the reason that these propositions are well established. The following authorities support some or all of these arguments: *Bauer* v. *County of Ventura,* 45 Cal.2d 276 [289 P.2d 1]; *Linggi* v. *Garovotti,* 45 Cal.2d 20 [286 P.2d 15]; *Laguna Drainage Dist.* v. *Chas. Martin Co.,* 144 Cal. 209 [77 P. 933]; *City of Santa Ana* v. *Harlin,* 99 Cal. 538 [34 P. 224]; *Frustuck* v. *City of Fairfax,* 212 Cal.App.2d 345, 357-358 [28 Cal.Rptr. 357]; *Redevelopment Agency* v. *Hayes,* 122 Cal.App.2d 777 [266 P.2d 105]; *Madera Railway Co.* v. *Raymond Granite Co.,* 3 Cal.App. 668 [87 P. 27]; Code of Civil Procedure, section 1238, subdivisions 3, 4. We are also in accord with plaintiff's position that the evidence above briefly recited clearly establishes that there is a public necessity for an adequate drainage canal to serve the lands within the city which are now subject to flooding and that the existing creek is inadequate for that purpose.

These are not the true problems presented by this appeal. The task of this court is to determine whether the trial court erred in finding that there is no necessity for plaintiff to condemn this particular land for its drainage control project and, necessity therefor wanting, plaintiff has no implied power to condemn land situate wholly outside its corporate limits.

■ Generally, a municipal corporation cannot exercise its powers beyond its corporate boundaries. If it has the power to do so, authority therefor must come from a statutory grant of direct or indirect power. (*County of Marin* v. *Superior Court,* 53 Cal.2d 633, 636 [2 Cal.Rptr. 758, 349 P.2d 526], *City & County of San Francisco* v. *Ross,* 44 Cal.2d 52,

55 [279 P.2d 529].)

Concededly plaintiff, as a city of the sixth class, derives power from statutory law to condemn land (Civ. Code, § 1001) for the purpose of drainage (Code Civ. Proc., § 1238, subd. 3; Gov. Code, § 40404); and for the protection of land against flooding (Code Civ. Proc., § 1238.6); and may improve rivers and streams flowing through or adjoining the city (Gov. Code, § 39961); and construct or improve any enterprise wholly or partially within or without its boundaries and acquire real property therefor by eminent domain (Gov. Code, § 54341); and a mandate is laid upon the courts to give a liberal construction to all sections dealing with the power of eminent domain embraced within the Code of Civil Procedure (Code Civ. Proc., § 1260). However, section 1241, subdivision 2, of the Code of Civil Procedure limits the power of the condemning agency when the proposed taking is outside its territorial limits. When the taking is located within the territorial limits of the condemning agency, a resolution or ordinance duly adopted by its governing body is "conclusive evidence; (a) of the public necessity of such proposed public utility or public improvement; (b) that such property is necessary therefor, and (c) that such proposed public utility or public improvement is planned or located in the manner which will be most compatible with the greatest public good, and the least private injury" but when the property sought to be taken is located outside its boundaries, such ordinance or resolution is not conclusive evidence thereof.

 It is thus clear that a determination of the condemner as to public need, necessity and route for, or site of, a proposed public improvement within its boundaries is a legislative, not a judicial, matter (*People* v. *Chevalier*, 52 Cal.2d 299, 305 [340 P.2d 598]); but when a city seeks to condemn land without its corporate limits, it devolves upon the courts to determine whether the taking of the particular land is necessary for the use (*Harden* v. *Superior Court*, 44 Cal.2d 630 [284 P.2d 9]).

 Nowhere in the statutes above referred to is there an express grant of power enabling the plaintiff to reach its hand outside its boundaries, nor may such grant of power be fairly implied except in a case involving legal necessity.

 Turning to the issue of necessity, the judgment must be upheld if it is sustained by the findings and the findings are supported by the evidence. In the trial court the

burden of proving necessity rests upon the condemner and the necessity of the taking is a question of fact for the trier of facts. (*Spring Valley Water Works* v. *Drinkhouse*, 92 Cal. 528, 532 [28 P.681].) ■ On an appeal, the appellant must bear the burden of showing that in the evidence upon which the findings are based there was no substantial conflict, and that the facts, and all inferences which may be drawn therefrom, as found by the court are contrary to the evidence.

■ On the question of whether the taking of defendant's property was necessary for the proposed drainage channel, a considerable volume of evidence was adduced before the trial court through expert testimony, maps, photographs, plans and related exhibits. We have carefully considered the evidence and our conclusion is that the findings of the trial court in this respect are supported by material evidence. This being so, the findings of the court below are conclusive upon this court.

■ Defendant produced three expert witnesses, Charles R. Crull, a civil engineer and former City Engineer for the City of Oceanside, Alton L. Rudin, City Engineer for the City of Oceanside, Byrl D. Phelps, a civil engineer and former City Engineer for the Cities of San Diego, Coronado, and National City. Each of these experts testified it was his opinion that there was no necessity for relocating the channel outside plaintiff's boundaries; that, for the purpose of draining the area involved and controlling mosquito breeding, a channel could properly be constructed approximately along the present natural bed of Buena Vista Creek entirely within plaintiff's boundaries; that, from hydrological studies and in accordance with sound hydraulic engineering principles the better method of conveying water from the east edge of the property at El Camino Real to the west edge at Jefferson Street would be by a channel constructed approximately along the natural historical creekbed for the reasons that that is the lowest land in the area by nature, has the greatest slope, and water would flow faster. Some of the experts testified that, if the drainage channel was constructed as proposed by plaintiff, water would stand therein causing silt and debris to accumulate and that standing water would contribute to the mosquito breeding problem. Mr. Crull testified that the channel as proposed by the plaintiff would cut across an existing road, an existing sewer line which serves the City of Oceanside, and would cut through the force main which leaves that city's sewage treatment and pump station, thus interfering with its operation. All of defendant's experts

testified that there is no logical reason for diverging from the better route along the existing natural creekbed and going north through defendant's property.

It is apparent that the evidence above summarized is sufficient to support the trial court's determination that there is no legal necessity for plaintiff to condemn defendant's land.

Plaintiff's contention that the opinion evidence of defendant's engineers was based on a few days' study of the problem and on hydraulic principles without consideration of factors of convenience, desirability and economy is without merit. ■ It rests with the trier of fact to determine the weight to be given the opinion of an expert witness (*Gentleman* v. *Nadell & Co.*, 197 Cal.App.2d 545, 553 [17 Cal.Rptr. 389]; *People* v. *Hecker*, 179 Cal.App.2d 823, 827 [4 Cal.Rptr. 334]; *People* v. *Loop*, 127 Cal.App.2d 786, 800 [274 P.2d 885]); and it is the exclusive judge of the effect and value of the evidence (Code Civ. Proc., § 2061). Differences between opinions of defendant's experts and plaintiff's experts represent merely a conflict in evidence (*People* v. *Hayward Bldg. Materials Co.*, 213 Cal.App.2d 457, 467 [28 Cal.Rptr. 782]), which the trial court resolved in favor of defendant, as it had a right to do (*People* v. *Loop, supra*).

■ Plaintiff's contentions that it is more desirable for plaintiff if the channel is located outside its limits; that in such event the property within its limits will be more valuable; and that Rildan, Inc., will make a gift of substantially all of the land needed for the right of way and will construct the channel at its expense, thus effecting a considerable saving to the city, are persuasive but unconvincing. Such considerations do not, in and of themselves, constitute the elements of legal necessity. As early as 1883 the Supreme Court, in *Spring Valley Water Works* v. *San Mateo Water Works*, 64 Cal. 123, at page 131 [28 P. 447], held that evidence that the taking of the land sought to be condemned "would be a great convenience" to the plaintiff, "would enhance the value of" its property, and would result in economy, established practical necessity, but was not sufficient proof to justify the taking. That philosophy appears to have remained unchanged. In the comparatively recent case of *Harden* v. *Superior Court, supra*, 44 Cal.2d 630, 638-639, the court quoted from *Mulville* v. *City of San Diego*, 183 Cal. 734, 737 [192 P. 702], as follows:

" 'In general, a municipality is competent to act beyond its boundaries only in those cases in which it is so empowered

by legislative authority and it is necessary, in passing upon the validity of acts of a municipality performed beyond its boundaries, to look to the general laws and municipal charter for the requisite authority. In certain instances, owing to the urgency of extreme expediency or necessity, express authority is dispensed with and the power of the municipality to perform certain acts beyond its boundary is implied as incidental to the existence of other powers expressly granted.' " And at page 641, the court speaks of powers essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable.

The record in this case discloses that while plaintiff may have shown *practical* necessity, there is no showing of urgency, or extreme expediency, or legal necessity, or that the proposed taking is indispensable. The record, on the contrary, supports our conclusion that there was no error in the court below.

The judgment is affirmed.

Griffin, P. J. and Coughlin, J., concurred.