[Civ. No. 1232. Fifth Dist. Jan. 29, 1971.]

CITY OF LOS ANGELES et al., Plaintiffs and Respondents, v. W. M. KECK, JR., et al., Defendants and Appellants.

## COUNSEL

Hanna & Morton, Harold C. Morton, John H. Blake and Douglas P. Grim for Defendants and Appellants.

Roger Arnebergh, City Attorney, Gilmore Tillman and Edward C. Farrell, Assistant City Attorneys, and Kenneth W. Downey, Deputy City Attorney, for Plaintiffs and Respondents.

## OPINION

**GINSBURG, J.**\*—This is an appeal from a judgment condemning the fee title to certain real property. Plaintiffs are the City of Los Angeles and its Department of Water and Power, and defendants are the owners of 640 acres of agricultural land situate outside the territorial limits of plaintiff city, being in the County of Kern.

In 1950 plaintiffs brought an action in the Superior Court of Kern County to obtain a permanent easement across defendants' property for

---

\*Assigned by the Chairman of the Judicial Council.

the purpose of constructing and maintaining electrical transmission lines. Subsequently, the then owners of the property conveyed to plaintiffs an easement over a strip of property sometimes called "Parcel 104." This strip is 250 feet wide, runs diagonally across the 640-acre parcel, and contains 17.34 acres. The easement so obtained contains broad grants of rights in connection with the construction, maintenance and operation of one or more electrical transmission lines.[1]

In 1952, plaintiffs constructed an electrical transmission line across the subject property within the easement right of way. They now are constructing an additional line within this area; this additional line was contemplated at the time they obtained the right of way, and there is no question but that they have adequate space within the 250-foot easement and the right to construct it under the terms of their existing easement. In fact, plaintiffs admit that by virtue of the existing easement they not only can continue their present use, but also they may accomplish any future use now within their contemplation.

This action was commenced in 1967 for the purpose of acquiring a fee simple estate in the identical property subject to the easement. No additional property nor right in any other portion of defendants' property was sought. A written "Stipulation Limiting Issues and Setting Just Compensation" was

---

[1]The conveyance is to the City of Los Angeles, its successors and assigns forever. It describes the rights so conveyed in the following language:

". . . all those certain permanent easements and rights of way to be used at any time and from time to time, to construct, reconstruct, maintain, operate, use, inspect, renew and enlarge one or more electrical transmission lines constructed on steel or wooden towers or poles with one or more overhead and underground wires for lightning protection and other purposes, and for any other similar and like structures which are necessary or convenient to transmit, distribute, regulate, use and control electrical energy; to construct, use, and maintain patrol roads; to clear and keep said right of way free from explosives, structures, brush and wood growths, and all combustible or other materials hazardous to the safe, efficient use and operation thereof; to protect them from fire and any other hazards; and for any and all other necessary, incidental or convenient purposes which may be required in, under, over, upon and across that certain real property situate in the County of Kern, State of California, more particularly described as follows, to wit:

". . . . [description of property] . . . . .

"Together with the right of ingress to said right of way across adjoining lands of grantor from the public highway most convenient to said right of way and the right of egress from said right of way to such highway across said adjoining lands of grantor, over and along any road now existing, or if none, then over the most direct and practical route grantee may select.

"Excepting and reserving unto the grantor only such grazing, agricultural and mineral rights as will not interfere with or prohibit the free and complete use and enjoyment by grantee, its successor or assigns of said rights and easements hereby granted.

"It is further understood and agreed that no other easement thereon shall be given by grantor to any third person, firm or corporation without the written consent of grantee."

executed by the parties prior to trial wherein they stipulated that ". . . [t]he only issue remaining between plaintiffs and defendants is public use and necessity for the taking of the above parcel [the land subject to the easement] and the *fee interest* therein." (Italics added.)

The trial court awarded judgment to the plaintiffs, finding that "[t]he public interest and necessity require interests in said parcel 104 in addition to those owned and enjoyed under the easement . . . ," and "[t]he public interest and necessity require the taking by plaintiffs of an estate *in fee simple* in the real property described in the Complaint as Parcel 104."[2]

The issues raised on this appeal are as follows:

(1) Was the finding of the trial court of necessity for the taking of the fee sustained by the evidence?

(2) Do plaintiffs have the absolute right to condemn the fee estate on property outside their territorial limits on which they already hold a permanent easement that includes all present and contemplated uses?

Plaintiffs contend that evidence supports the finding that the taking is for a public use and is necessary. They further contend that a resolution of the Board of Water and Power Commissioners and the ordinance of the City Council of the City of Los Angeles determining that public interest and necessity require the taking of a fee estate in Parcel 104 is conclusive upon the issue of the *quantum* of the estate to be taken.

 We first consider whether the plaintiffs have shown that the public interest and necessity require the taking of the property, i.e., the taking of the fee in the real property subject to this easement.

Public use and necessity are controlled by Code of Civil Procedure section 1241, which provides, in part, as follows: *"Before property can be taken,* it must appear: 1. That the use to which it is to be applied is a use authorized by law; 2. That the taking is necessary to such use; provided, when the board of . . . a public utility district . . . or the legislative body of a . . . city . . . shall, by resolution or ordinance, adopted by vote of two-thirds of all its members, have found and determined that the public interest and necessity require the acquisition, construction or completion, by such . . . city . . . of any proposed public utility, or any public

---

[2]Findings "5" and "6." But cf. Finding "9," which reads:

"Under the terms of said [existing] easements plaintiffs have the right to construct and operate a public improvement and works consisting of one or more electric power transmission lines and related appurtenances, including the electric power transmission line presently under construction, and a right of way therefor for the transmission and distribution of electricity for the purpose of furnishing and supplying electric energy to THE CITY OF LOS ANGELES."

improvement, and *that the property described in such resolution or ordinance is necessary therefor,* such resolution or ordinance shall be conclusive evidence; (a) of the public necessity of such proposed public utility or public improvement; (b) *that such property is necessary therefor,* and (c) that such proposed public utility or public improvement is planned or located in the manner which will be most compatible with the greatest public good, and the least private injury; *provided, that said resolution or ordinance shall not be such conclusive evidence in the case of the taking by any . . . city . . . of property located outside of the territorial limits thereof."* (Italics added.)

In *City of Carlsbad* v. *Wight,* 221 Cal.App.2d 756, 761 [34 Cal.Rptr. 820], the court said: ". . . section 1241, subdivision 2, of the Code of Civil Procedure limits the power of the condemning agency when the proposed taking is outside its territorial limits. . . .

". . . . . . . . . . . . . . . . . . . . .

"It is thus clear that a determination of the condemner as to public need, necessity and route for, or site of, a proposed public improvement within its boundaries is a legislative, not a judicial, matter (*People* v. *Chevalier,* 52 Cal.2d 299, 305 [340 P.2d 598]); but when a city seeks to condemn land without its corporate limits, it devolves upon the courts to determine whether the taking of the particular land is necessary for the use (*Harden* v. *Superior Court,* 44 Cal.2d 630 [284 P.2d 9])."

It is apparent that the Legislature, in differentiating between property inside and outside the territorial limits of the condemning agency, recognized the differences in the postures of both the property owner and the condemning agency in these contrasting situations. Where the property is inside the territorial limits, the ministerial officers and legislative body of the condemning agency and the property owners and taxpayers should have full knowledge of conditions, locations, and the public good involved in the proposed improvement. Furthermore, the legislative body and, by derivation, their ministerial functionaries, are accountable to those who are property owners and, also, to those who are taxpayers within the territorial limits through the elective process. ■ But where the property sought to be taken is outside and distant from these territorial limits, neither such knowledge nor such accountability may be present. Thus, the Legislature has specifically provided that the courts shall pass upon such a taking (see Code Commissioners' Note to Code Civ. Proc., § 1241, Deering's Ann. Codes).

We must thus look to the evidence adduced at the trial to determine whether the plaintiffs have met the burden of proving that the "public

interest and necessity require the acquisition" of the fee of the property in question, within the meaning and intent of Code of Civil Procedure section 1241, subdivision 2, *supra*. In so doing, we apply the limited power of appellate review, and to that end determine only whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court (*Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; 3 Witkin, Cal. Procedure (1954) Appeal, § 84, p. 2245, and cases cited therein).

Plaintiffs point to the ordinance and resolution as *prima facie* evidence of *necessity* under Code of Civil Procedure section 1241, relying upon *People* ex rel. *Dept. Pub. Wks.* v. *Lagiss,* 223 Cal.App.2d 23, 36 [35 Cal.Rptr. 554]. The *Lagiss* case holds such a resolution to be *prima facie* evidence that the taking is, in fact, for a *public use* under Code of Civil Procedure section 1238, subdivision 3; but, where the property is outside the condemning agency's territorial limits, we know of no case which holds it is evidence of *necessity* under Code of Civil Procedure section 1241, subdivision 2, or any statute so providing. Section 1241, subdivision 2, states that such a resolution shall not be *conclusive* evidence that the taking is necessary. ■ ■ Under the general rule that language purporting to define the powers of municipal corporations must be strictly construed (see *Harden* v. *Superior Court,* 44 Cal.2d 630, 638-639 [284 P.2d 9], and cases cited therein), we hold that neither the resolution of the board of a public utility district nor the ordinance of the legislative body of a city is *prima facie* evidence of necessity under Code of Civil Procedure section 1241, subdivision 2, where the property is outside the condemning agency's territorial limits.

■ Plaintiffs' only evidence, other than the ordinance and resolution, was the testimony of one York, an engineer employed by the Los Angeles Department of Water and Power. York testified that one electrical transmission right of way was located on the property, that a second was then in the process of being constructed, that this second line was contemplated at the time the easement was acquired in 1951, and "that's why the right of way [is of] the width of 250 feet. . . ." He admitted that 250 feet would be excessive for only one line, and that the first line had been placed 75 feet from the easterly edge of the right of way in 1952 in contemplation of the second line now being constructed. He further testified that no additional use of the property is contemplated.

Perhaps the most compelling evidence of lack of necessity is plaintiffs' answers to certain interrogatories, wherein they admit that all uses of the

property present or contemplated are permissible under the existing easement.[3]

■ Over defendants' objection, certain testimony was given concerning departmental "policy," which counsel for plaintiffs described as ". . . the meat of the coconut . . . [t]his is what the whole lawsuit is about." This "policy" was stated to be to obtain the fee to transmission line rights of way. Although the policy of a legislative body may be admissible evidence of a fact in certain situations, to hold policy to be admissible in evidence as a reason or a fact of itself upon which to find necessity for taking in a case such as this, would be to denigrate the plain language and intent of Code of Civil Procedure section 1241, subdivision 2; it would permit, through indirection, a legislative determination instead of a judicial determination. (See *City of Carlsbad* v. *Wight, supra,* 221 Cal.App.2d 756, 761.) It may be presumed that "policy" is an im-

---

[3]The pertinent interrogatories and their respective answers are as follows:

*Interrogatory No. 3*

"Paragraph 3 of the complaint alleges that public interest and necessity require the construction and operation of 'electric power transmission lines and related appurtenances, and a right of way therefor, for the transmission and distribution of electricity for the purpose of furnishing and supplying electric energy to the City of Los Angeles and the inhabitants thereof.' Is it not a fact that the plaintiffs presently have constructed and operate electric power transmission lines and related appurtenances over and across a right of way therefor for such purposes, pursuant to the easements Exhibits A and B to the answer of these defendants?"
Answer: "Yes."

*Interrogatory No. 4*

"Do the plaintiffs contemplate and propose any further or additional purpose or use of parcel 104 than as presently used by plaintiffs pursuant to the easements Exhibits A and B referred to?"
Answer: "The only additional use the plaintiffs presently contemplate for Parcel 104 is the construction of an additional electric transmission line across said parcel."

*Interrogatory No. 5*

"If the answer to previous interrogatories is 'yes,' describe what use or purpose is contemplated by plaintiffs different or in addition to use and purpose to which parcel 104 is presently put pursuant to said easements Exhibits A and B to the answer."
Answer: "This new project would be an additional use rather than a different use or purpose."

*Interrogatory No. 6*

"If plaintiffs have answered they contemplate additional use or purpose with respect to parcel 104, does plaintiff take the position that such additional use or purpose is one which plaintiffs cannot subject parcel 104 to under the existing agreements held by plaintiffs?"
Answer: "The additional use is one that is permissible under the existing easements."

pelling force for the taking in any case, but it does not, of itself, create nor is it evidence of necessity.[4]

■ The evidence of the defendants, on the other hand, shows that this land is now used for grazing, and that plaintiffs' easement and their use have created no conflicts or problems. It was uncontradicted that there has been no trouble or even inconvenience to either party resultant from the combined uses. It is uncontradicted from the evidence that to divide this 640-acre farming unit by the diagonal strip of land would result in a totally unnecessary and unwarranted diminution of its economic potential; further, it would be a waste of the utility users and taxpayers' funds to purchase it in that they would gain no rights which they do not already have.[5]

We, therefore, hold that plaintiffs have failed to meet the burden of showing that the proposed taking of the fee is necessary for the public use, and that the judgment is not supported by the evidence.

■ Plaintiffs' next contention is that the resolution and ordinance of plaintiffs are conclusive evidence for the taking of the fee estate whether the property is located outside their territorial limits or not. They cite Code of Civil Procedure section 1239, subdivision 4, as giving the condemning agency the power to determine, as a legislative decision, the issue of the *quantum* of the estate to be taken. They cite *City of Santa*

---

[4]Much of the other testimony of the witness York, admitted over objection, was completely irrelevant to the issue of necessity. It was concerned with the importance of electrical energy and the dependence of people in metropolitan areas upon an uninterrupted flow of it. Such events as a recent blackout of power on the east coast received due consideration, along with a discourse on the history of the particular transmission line then in construction upon defendants' property. Nor was the subject of public opinion neglected—it was brought out that people object less to power lines paralleling each other (as permitted by the existing easement here) than to separate lines across the country side, and that the Division of Light and Power of the City of Los Angeles is "not indifferent to [public opinion] in this day and age." Various difficulties having to do with violations of the easements by third parties in areas other than the area of the subject property were testified to; the numbers of men and pieces of equipment necessary to repair a line were discussed, and the interference with their movement by violations of the right of way was considered. There was no evidence either (1) that these difficulties had occurred, were occurring, or were likely to occur in the future on the *subject property* or near it, or (2) that owning the fee would prevent violations of the right of way. *The witness admitted under cross-examination that plaintiffs could have the same problems with the fee as with an easement.*

[5]We note from the "Stipulation Limiting Issues and Setting Just Compensation" that the sum of $2,900 is the price to be paid for the fee herein if it is taken. Said fee is over an approximately one-mile portion of the transmission line. The witness York testified that the plaintiffs were buying or taking by condemnation the entire existing right of way from the Oregon border to the City of Los Angeles.

*Barbara* v. *Cloer,* 216 Cal.App.2d 127 [30 Cal.Rptr. 743] as authority for such an interpretation.

Even assuming plaintiffs' interpretation is correct, still, the basic finding that public use and necessity required the taking of any property under Code of Civil Procedure section 1241, subdivision 2, must necessarily be made. Here the evidence does not support a finding that the plaintiffs need anything more than they already have; so the question of quantum of the estate to be taken is moot.

The judgment is reversed.

Gargano, Acting P. J., and Coakley, J.,* concurred.

A petition for a rehearing was denied February 23, 1971, and respondents' petition for a hearing by the Supreme Court was denied March 26, 1971. Burke, J., was of the opinion that the petition should be granted.

---

*Retired Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.