Filed 2/13/25 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| TOWN OF APPLE VALLEY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> APPLE VALLEY RANCHOS WATER et al., <br><br> Defendants and Respondents. | E078348 <br><br> (Super. Ct. No. CIVDS1600180) <br><br> **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** <br> [NO CHANGE IN JUDGMENT] |

The petition for rehearing is denied. The opinion filed in this matter on January 15, 2025, is modified as follows:

1. On page 2 the third paragraph is modified to delete the word "entirely" and replace it with "in large part" so that the sentence reads as follows:

We reverse for two main reasons: (1) the trial court applied the wrong standard of proof and, in turn, failed to give the appropriate deference to TAV's decision and underlying findings, and (2) the trial court improperly based its decision on post-RON facts and event, namely, Liberty's conduct after TAV adopted the RONs. The matter is remanded for further proceedings consistent with this opinion.

1

2. On page 6, section III Discussion, after (2) the sentence is modified to read as follows:

(2) the court erroneously refused to admit and consider the AR and the RONs' findings/objectives and TAV's reasons for adopting them and, in so doing, misapplied the rebuttable presumption;

3. On page 12, in the citation after the second full sentence of the first paragraph, change "§ 1245.250, subd. (c)" to "§ 1245.250, subdivision (b)."

4. On page 22, in the last full paragraph, delete "(*ibid*.)"

5. On page 34, the second paragraph third sentence is modified to read as follows:

Liberty necessarily could not do so unless the RON and its underlying findings/objectives in the AR and TAV's reasons for adopting the RON were considered at the outset.

6. On pages 35 and continuing on page 36, the last paragraph is modified to read as follows:

"'[I]ndependent judgment' review" "'does not mean the preliminary work performed by the [agency] in sifting the evidence and in making its findings is wasted effort . . . . [I]n weighing the evidence the courts can and should be assisted by the findings of the [agency].'" (*Fukuda v. City of Angels*, *supra*, 20 Cal.4th at p. 812.) The trial court's SOD completely failed to apply these principles, irrespective of which standard of review applies. Liberty does not and cannot dispute that the SOD does not mention the RONs' findings and objectives and ignores a number of TAV's reasons for adopting the RONs while disregarding a significant amount of supporting evidence and

focusing instead on Liberty's extra-record, post-RON evidence.[8]  In doing so, the trial court rendered the rebuttable presumption in section 1245.250, subdivision (b) meaningless and "infected" the SOD's findings with "fundamental error."  (*Fukuda v. City of Angels*, *supra*, at p. 824.)  Liberty ignored this issue entirely at oral argument in this court.

7. On page 36, the last paragraph footnote 8 is added to read as follows:

[8]  For example, the SOD does not acknowledge that TAV adopted the RONs because of its concerns with Carlyle's management of the water system and Carlyle's threats to sue TAV over its plans to recycle water.  Nor does the SOD recognize that TAV wanted to acquire the water system in order to improve fire prevention and land use planning, and to integrate the system into its sewer system to promote recycled water.

8. On page 37, the second-to-last last sentence is modified to read as follows:

A RON would likewise be meaningless (and a complete waste of public resources) if it could be invalidated with exclusively post-RON evidence.

9. On page 38, first full paragraph, the first sentence, delete the word "wholly."

10. On page 41, the last sentence of the Disposition is modified to read as follows:

Liberty may recover its costs on appeal.  (See § 1268.720; *Eastern Municipal Water District v. Superior Court* (2007) 157 Cal.App.4th 1245, 1256.)

3

Except for these modifications, the opinion remains unchanged.  This modification does not effect a change in the judgment.

CERTIFIED FOR PUBLICATION


CODRINGTON
J.


We concur:

McKINSTER
Acting P. J.


FIELDS
J.

Filed 1/15/25 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| TOWN OF APPLE VALLEY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>APPLE VALLEY RANCHOS WATER et al.,<br><br>    Defendants and Respondents. | E078348<br><br>(Super. Ct. No. CIVDS1600180)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Donald R. Alvarez, Judge.  Reversed.

Greines, Martin, Stein & Richland, Edward Xanders, and Timothy T. Coates; Best Best & Krieger, Kendall MacVey, Christopher Pisano, and Guillermo Frias, for Plaintiff and Appellant.

Manatt, Phelps & Phillips, Edward G. Burg, Michael M. Berger, George M. Soneff, David Moran, Benjamin Shatz, and Joanna S. McCallum, for Defendant and Respondent, Apple Valley Ranchos Water.

No appearance for Defendants and Respondents, Jess Ranch Water Company, and Jess Ranch Development Company.

1

# I.

## INTRODUCTION

The Town of Apple Valley (TAV) sought to condemn via eminent domain a private water utility system. In November 2015, TAV passed two resolutions of necessity (RON) to acquire the water system, which was then owned by Carlyle Infrastructures Partners and operated by Apple Valley Ranchos Water (AVR). In January 2016, TAV filed this eminent domain action to acquire the water system. A day later, Carlyle's sale of the water system to respondent Liberty Utilities closed.

After extensive proceedings, including a 67-day bench trial held between late 2019 and early 2021, the trial court issued a Statement of Decision (SOD) finding that TAV did not have the right to acquire the water system. The court thus entered judgment and an award of attorney's fees for Liberty. TAV timely appealed.

We reverse for two main reasons: (1) the trial court applied the wrong standard of proof and, in turn, failed to give the appropriate deference to TAV's decision and underlying findings, and (2) the trial court improperly based its decision entirely on post-RON facts and events, namely, Liberty's conduct after TAV adopted the RONs. The matter is remanded for further proceedings consistent with this opinion.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2010, investment fund Carlyle Infrastructure Partners purchased TAV's water system from AVR over TAV's objections. Because TAV was concerned about how Carlyle would operate the water system, TAV began investigating whether to acquire the system in early 2011.

In September 2014, however, Carlyle entered into a merger agreement to sell the water system to Liberty, a subsidiary of Algonquin Power & Utilities Corporation. Right after signing the agreement, Liberty began seeking approval from the California Public Utilities Commission (CPUC), which took until January 2016 to complete. As reflected in the merger agreement, Liberty and Carlyle knew that TAV was considering taking the water system via eminent domain.

In November 2015, while the merger agreement remained pending, TAV approved two RONs to acquire the water system from AVR. One RON concerned the water system within TAV's boundaries while the other concerned minor parts of the system outside of TAV's boundaries.[1] The RONs defined TAV's project as the "public ownership, operation, and maintenance of the Apple Valley Water System to provide water service to the public."

---

[1] The parties do not differentiate between the RONs and Liberty does not argue that they should be analyzed differently. Rather, Liberty essentially treats the RONs as only one RON that concerns the water system within TAV's borders.

7

In December 2015, the CPUC approved the merger agreement over TAV's objections, which allowed Liberty to acquire the water system.

In January 2016, TAV filed this eminent domain action against AVR.[2] Later that month, Liberty's purchase of the water system from AVR went through.

Liberty's operative amended answer asserts various objections under California's Eminent Domain Law (Code Civ. Proc., § 1230.010 et seq.), although Liberty later abandoned most of them.[3] As relevant here, Liberty objected on three main grounds: (1) the public interest and necessity do not require TAV's project (§ 1240.030, subd. (a)); (2) the project is not planned in a manner most consistent with the greatest public good and least private injury (§ 1240.030, subd. (b)); and (3) TAV's proposed use of the water system is not a more necessary public use (MNPU) than Liberty's continued use (§ 1240.650, subds. (a), (c)).

In 2018, the trial court ruled on the parties' disputes over (1) the appropriate standard of review for the trial court to apply when deciding Liberty's objections after a bench trial and (2) the role of the 55,000-page administrative record (AR) underlying TAV's RONs. TAV argued the "gross abuse of discretion standard of section 1245.255, subdivision (b)" controlled, meaning that Liberty had to show TAV's adoption of the RONs was a gross abuse of discretion. Liberty, on the other hand, argued it only had the

_____

[2] TAV sued two other entities, but those claims are not at issue here.

[3] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

8

burden of proving by a preponderance of the evidence "the nonexistence of (1) one or more of the three public necessity elements in [s]ection 1240.030; or (2) the more necessary public use element under [s]ection 1240.650(c)."

As for the AR, TAV argued that Liberty had to submit the entire AR, yet it failed to do so. Liberty argued the AR was irrelevant because it was not objecting to the validity of the RONs and, as TAV conceded, Liberty was entitled to rely on evidence outside of the AR to meet its burden.

The trial court agreed with Liberty on both issues in a thorough order in October 2018. The trial court ruled that the "gross abuse of discretion standard" does not apply and, instead, Liberty bears the burden of proving by a preponderance of the evidence that at least one of the four required elements (see § 1240.030, 1240.650, subd. (c)) was not satisfied. The court then ruled that to meet this burden, Liberty need not submit the AR. Rather, the court decided that "[i]t is up to Liberty to decide what evidence it believes is relevant to meeting its burden of proof."

The trial court held a bench trial spanning over 67 court days between 2019 and 2021. After receiving post-trial briefing, the trial court issued an 84-page tentative SOD finding that Liberty had met its burden and thus TAV was not entitled to acquire the water system via eminent domain.

The SOD does not acknowledge or mention the RON's findings or objectives, nor does it explain how Liberty rebutted them. The SOD essentially rejected all of TAV's evidence while finding Liberty's more persuasive or credible.

9

TAV filed extensive objections to the tentative SOD, including objections that (1) the trial court failed to give any deference to the RONs and their findings, (2) the trial court erroneously allowed Liberty to present whatever evidence it wanted to introduce to rebut the RONs, (3) the trial court should have admitted and considered the AR, (4) the trial court failed to apply the "gross abuse of discretion" standard, (5) the trial court failed to consider the RONs' findings as they existed when the RONs were adopted, (6) Liberty's answer failed to state with specificity the facts and grounds on which its objections were based as section 1250.230 requires, (7) the trial court incorrectly relied exclusively on post-RON evidence to determine whether the RONs' findings were rebutted and whether Liberty had met its burden, (8) at the same time, the trial court improperly precluded TAV from using post-RON evidence to support its position, and (9) at a minimum, the trial court should have remanded the case to TAV to consider in the first instance the post-RON evidence admitted at trial that the SOD relied on.

The trial court overruled all of TAV's objections and adopted the tentative SOD in full as its final SOD (except for minor modifications Liberty requested). The court then entered judgment for Liberty, dismissed TAV's complaint, and awarded Liberty over $13 million in attorney's fees. TAV timely appealed.

### III.

### DISCUSSION

TAV contends the trial court made four fundamental errors: (1) the court applied the wrong standard of review; (2) the court erroneously refused to admit and consider the

10

AR and the RON's findings/objectives and, in so doing, misapplied the rebuttable presumption; (3) the court improperly relied on post-RON evidence to find Liberty met its burden, yet ruled that TAV could not rely on post-RON evidence to support the RONs; and (4) assuming post-RON evidence is relevant, the court erred by refusing to remand the case to allow TAV to consider post-RON evidence in the first instance. We address each issue in turn, but we first provide some background on the applicable law.

A. *Legal Background*

1. *Eminent Domain Law*

Eminent Domain Law (§ 1230.010 et seq.) outlines "[t]he entire framework which exists for the exercise of the inherent governmental power of eminent domain in California," and "these statutory provisions must be strictly complied with when proceeding in an eminent domain action." (*San Bernardino County Flood Control District v. Grabowski* (1988) 205 Cal.App.3d 885, 893 (*Grabowski*).)

In general, a public entity may take property via eminent domain only if the proposed "project" meets three criteria, which we refer to as the "public necessity elements": (1) the public interest and necessity require the project; (2) the project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury; and (3) the property sought to be acquired is necessary for the project. (§ 1240.030, subds. (a)-(c); *SFFP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 468.) When, as here, the taking involves property already used for a public use (such as a utility), there is a fourth element; (4) the project's

11

proposed use of the property must be "a more necessary public use than the use to which the property is appropriated" (the MNPU element) (§ 1240.610).

A public entity may file an eminent domain action only if it has, among other things, adopted a RON finding that the proposed taking satisfies the three public necessity elements. (§ 1245.220.) If the entity has adopted a RON, the RON must expressly state that the public entity has "found and determined" that the three public necessity elements have been satisfied. (§ 1245.230, subd. (c).) When, as here, the project concerns a "property appropriated to public use," the RON need not "find" or "determine" that the MNPU element has been satisfied, but it must "refer" to the MNPU element statute (§ 1240.610).

A validly adopted RON triggers certain legal presumptions, depending on the project. Generally, "[e]xcept as otherwise provided by statute, a resolution of necessity adopted by the governing body of the public entity . . . conclusively establishes the matters referred to in section 1240.030" (i.e., the public necessity elements). (§ 1245.250, subd. (a).) Similarly, it is also presumed that the MNPU element is satisfied when the property to be condemned is already "appropriated to public use" and the public entity seeks to use the property for the same public purposes. (§ 1240.650, subd. (a).)

Different presumptions apply in other circumstances. If the property sought to be taken is a public utility, a validly adopted RON only "creates *a rebuttable presumption* that the [three public necessity elements] are true," which "affect[s] the burden of proof." (§ 1245.250, subd. (b), italics added.) Likewise, if the property is a public utility that

12

"the public entity intends to put to the same use," the MNPU presumption is only "*a rebuttable presumption* affecting the burden of proof." (§ 1240.650, subd. (c), italics added.) Finally, if the property "is not located entirely within the boundaries of the local public entity, the resolution of necessity creates *a presumption* that the [three public necessity elements] are true," which affects "the burden of producing evidence." (§ 1245.250, subd. (c), italics added.)

A property owner may obtain judicial review of the validity of a RON before an eminent domain suit is filed by petitioning for a writ of mandate under section 1085 or, if an eminent domain suit has been filed, by objecting to the right to take. (§ 1245.255, subd. (a).) Under either procedure, the trial court generally must apply a section 1085 deferential standard of review. (*Redevelopment Agency v. Rados Bros.* (2001) 95 Cal.App.4th 309, 316; *Burbank-Glendale-Pasadena Airport Authority v. Hensler* (1991) 233 Cal.App.3d 577, 589; *Anaheim Redevelopment Agency v. Dusek* (1987) 193 Cal.App.3d 249, 258 (*Dusek*).)

If the public entity has filed an eminent domain suit, the defendant-property owner may object via a demurrer or an answer only on the grounds "authorized by [s]ection 1250.360 or [s]ection 1250.370." Section 1250.360 outlines various "[g]rounds for objection to the right to take, regardless of whether the plaintiff has adopted a [RON]." The only one at issue here is that the proposed taking does not satisfy the MNPU element of section 1240.610. (See § 1250.360, subd. (f).) Section 1250.070 identifies the "grounds for objection to the right to take where the plaintiff has not adopted a [RON]

13

that *conclusively* establishes" that the public necessity elements have been met. (Italics added.) The only objection at issue here is that the taking would not satisfy the public necessity elements. (See § 1250.370, subds. (b)-(c).)

The trial court "shall hear and determine all objections to the right to take." (§ 1260.120, subd. (a).) To do so, "[t]he court may . . . specially set [objections to the right to take] for trial." (§ 1260.110, subd. (b).)

The standard of review the trial court uses to resolve an eminent domain dispute can differ depending on the nature of the property sought to be taken. As relevant here, eminent domain actions involving property outside the boundaries of the public entity's jurisdiction (extraterritorial cases) are reviewed more strictly than actions involving property within the jurisdiction's boundaries. This is because of the different corresponding statutory presumptions (see §§ 1245.250, subds. (a), (c).)

When the property sought to be taken is within the public entity's jurisdictional boundaries, a RON has a conclusive effect as to the three public necessity elements unless "'its adoption or contents were influenced or affected by gross abuse of discretion by the governing body.'" (*Santa Cruz County Redevelopment Agency v. Izant* (1995) 37 Cal.App.4th 141, 148-149 (*Izant*).) This may be shown by "a lack of substantial evidence supporting the [RON]" or by showing that "at the time of the agency hearing, the condemnor had irrevocably committed itself to the taking of the property regardless of the evidence presented." (*Ibid*.)

14

This deferential standard applies because the adoption of a RON is "a quasi-legislative act." (*Dusek*, *supra*, 193 Cal.App.3d at p. 260.) Courts generally must defer to a public entity's "'fundamental political question'" to take property (*ibid*.), "because of the constitutional separation of powers." (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 572; see also *Dusek*, *supra*, at p. 255 [noting "the historical deference accorded legislative determinations of necessity"]; *Izant*, *supra*, 37 Cal.App.4th at p. 150 [a "resolution of necessity is a legislative act . . . and thus great deference must be given to the legislative determination"].) Under the gross abuse of discretion standard, the trial court "'is limited to an examination of the proceedings to determine whether adoption of the resolution by the governing body of the public entity has been arbitrary, capricious, or entirely lacking in evidentiary support, and whether the governing body has failed to follow the procedure and give the notice required by law.'" (*Dusek*, *supra*, at pp. 257-258.) The trial court is thus confined to the administrative record and may not accept extra-record evidence. (See *Western States Petroleum Assn. v. Superior Court*, *supra*, at p. 576; *Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1269.)

Extraterritorial cases differ in the evidence the trial court may consider and how the court views the evidence. A defendant-property owner challenging a public entity's extraterritorial taking is entitled to a full trial during which the trial court may consider extra-record evidence. (See e.g., *Grabowski*, 205 Cal.App.3d 885, 893; *City of Los*

15

*Angeles v. Keck* (1971) 14 Cal.App.3d 920, 925-926 (*Keck*); *City of Carlsbad v. Wight* (1963) 221 Cal.App.2d 756, 761-762 (*Wight*).

In extraterritorial cases, a validly adopted RON creates a rebuttable—as opposed to conclusive—presumption that the public necessity elements have been met. (§ 1245.250, subd. (c).)  This allows the trial court to decide whether, based on all the evidence admitted at trial, the elements have been met.  (See *id.*, Leg. Comm. Comments—Senate [noting that section 1245.250 subd. (c), like its predecessor statute, makes the public necessity elements "justiciable"].)

The Legislature decided to differentiate intraterritorial and extraterritorial takings because of the "the differences in the postures of both the property owner and the condemning agency in these contrasting situations."  (*Keck*, *supra*, 14 Cal.App.3d at p. 925.)  To begin with, public entities cannot exercise their power outside of their jurisdictional boundaries (with limited exceptions not present here).  (*Wight*, *supra*, 221 Cal.App.3d at p. 761.)  But when a public entity decides to take property within its borders via eminent domain, that is "is a legislative, not a judicial, matter."  (*Ibid.*)

There are also differing governmental representation concerns at issue because "[w]here the property is inside the territorial limits, the ministerial officers and legislative body of the condemning agency and the property owners and taxpayers should have full knowledge of conditions, locations, and the public good involved in the proposed improvement."  (*Keck*, *supra*, 14 Cal.App.3d at p. 925.)  The legislative body and its officials "are accountable to those who are property owners and, also, to those who are

16

taxpayers within the territorial limits through the elective process." (*Ibid*.)  On the other hand, "where the property sought to be taken is outside and distant from these territorial limits, neither such knowledge nor such accountability may be present." (*Ibid*.)  In other words, an extraterritorial takings is not a quasi-legislative act of a coequal branch of government that is entitled to deference because it is not a valid exercise of the public entity's legislative power, which does not extend beyond its boundaries (except in circumstances not present here).  (See *ibid*.; *Wight*, *supra*, 22 Cal.App.2d at p. 760.)  "Thus, the Legislature has specifically provided that the courts shall pass upon" extraterritorial takings.  (*Keck*, *supra*, at p. 925.)

### 2. *The 1992 Amendments to the Eminent Domain Law*

The Legislature amended the Eminent Domain Law in 1992 with Senate Bill No. 1757, which enacted the rebuttable presumptions for public utility takings in sections 1245.250, subdivision (b) and 1240.650, subdivision (c).[4]  (See Senate Bill No. 1757 (1991-1992 Reg. Sess.; Senate Bill No. 1757) (Stats. 1992, ch. 812, §§ 2-3); *Pacific Gas & Electric Co. v. Superior Court* (2023) 95 Cal.App.5th 819, 830 (*PG&E*).)

Assemblymember Jackie Speier was granted unanimous consent by the Legislature to print a statement concerning Senate Bill No. 1757 in the Assembly Journal. Assemblymember Speier explained:  "[Senate Bill No. 1757 makes a procedural change in how, under limited circumstances, the question of necessity and better public use is

---

[4] We grant TAV's unopposed request that we take judicial notice of the legislative history of Senate Bill No. 1757.  We also note that Liberty relies on the legislative history as well.

17

proven in eminent domain actions.  It creates a rebuttable rather than a conclusive presumption in the specified circumstances.  [¶]  When I presented [Senate Bill No.] 1757 on the Floor for Assembly passage, I stated in argument and stressed to the Assembly that this is a procedural change, evidentiary in nature, and that it does not affect basic rights but *only allows introduction of evidence on the subject of the presumption*."  (Emphasis added.)

Several legislative reports explain the legislation's "procedural change[s]" and its purposes in greater detail.  A Senate Committee on the Judiciary analysis explains that the purpose of Senate Bill No. 1757 is "to allow private utility companies to challenge the decision of a public entity to take over the utility property for public operation and use." The report notes that a RON is generally conclusive unless its adoption or contents "were the result of a gross abuse of discretion."  The report explains:  "Section 1240.650 generally provides a conclusive presumption that the same use by public entities of the property to be taken is a "more necessary use" than the use for which the property was already being used by the private entity.  The purpose of the presumptions is to avoid litigation and challenges to a public entity's legislative determination of public use and necessity."

Senate Bill No. 1757 thus "would remove those conclusive presumptions in the case of privately owned public utility property which is being taken for the same public use.  The bill would instead substitute a rebuttable presumption affecting the burden of proof in favor of the condemnor public entity.  Unlike a conclusive presumption, which

18

cannot be challenged or contradicted, a rebuttable presumption affecting the burden of proof permits a challenge to the fact being assumed. Under Evidence Code [s]ection 605, 'the effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates the burden of proof as to the non-existence of the presumed fact.' Thus, in a case where the public entity proposes to take privately owned public utility property by eminent domain for the same use, [Senate Bill No.] 1757 would enable the private utility to challenge the proposed taking as to its necessity and purpose. However, it would be the condemnee private entity's burden to show that the taking was not a 'public necessity' and that the proposed use was not a more necessary use. [¶] A similar rebuttable presumption of 'more necessary use' applies where the state seeks to take property which is already put to the same use as is intended by the state (C.C.P. [§] 1240.640)."

An Assembly Committee on the Judiciary report explained that under then-existing law, a validly adopted RON "will <u>conclusively establish</u> that the prerequisites for taking the property (i.e., the public necessity) have been met <u>and</u> the property owner's right to challenge the right of the public entity to condemn the property will be severely limited. However, if a local public entity condemns property outside of its boundaries, the resolution of necessity creates a <u>rebuttable presumption</u> that the conditions for taking the property have been met (e.g., the resolution's finding that there is a 'public necessity' for the taking of the property is rebuttable)."

The report then summarized Senate Bill No. 1757 as making two main changes to the law.  First, "[i]n eminent domain proceedings involving the property of an electric, gas or water public utility there is a rebuttable, rather than a conclusive presumption that (a) the taking of the property is a 'more necessary taking' and (b) the content of the resolution of necessity is true (e.g., the taking of the property is a 'public necessity') if the condemning public entity intends to put the property to the same use as the utility."  Second, "[t]he rebuttable presumption is in favor of the condemning agency and is a presumption affecting the burden of proof."

The report went on to explain that "[b]y making the presumption rebuttable, this bill will give . . . utilities much greater ability to challenge any proposed taking of their property when it is being condemned with the intent to continue to use it as a utility."  Although the utility would have the burden of showing that "the taking was not a 'public necessity' and that the proposed use was not a more necessary use," which would not be "an easy task" since it would require "prov[ing] the non-existence of any fact," Senate Bill No. 1757's amendments "will provide private utility owners a much greater ability to challenge any decision to condemn their property."

An Enrolled Bill report relays the Governor's Office of Planning and Research's (GOPR) statement explaining its recommendation that the governor sign Senate Bill No. 1757.  That office understood the legislation as only "provid[ing] for a rebuttable, rather than a conclusive, presumption in certain eminent domain proceedings."  The report explained:  "Under current law, if the public entity plans to put the property to the same

20

use or any other public use, that use is *conclusively* presumed to be a 'more necessary use' than the current use. Legally, 'conclusive presumption is an automatic determination that a particular action is beyond dispute and which renders evidence to the contrary inadmissible. The rationale is that the usual validity of the assertion outweighs the costs and time of taking evidence." The GOPR understood that, on the other hand, a "'rebuttable presumption' is a presumption which may be rebutted or disputed by evidence; if no or insufficient evidence is presented, the presumption stands."

3. *PG&E*

*PG&E*, *supra*, 95 Cal.App.5th 819, was decided after TAV filed its opening brief and, to date, it is the only published decision to consider the 1992 utility amendments and their effect on the standard of review in an eminent domain action involving a public utility. Because Liberty contends *PG&E* forecloses TAV's argument that the trial court used the wrong standard of review and we disagree with the decision in some key respects, we discuss it in detail.

*PG&E* arose from a writ proceeding concerning the parties' dispute over the appropriate standard of proof to be used at the trial on an irrigation district's eminent domain action to take PG&E's electric distribution system within the district's service area. (*PG&E*, *supra*, 95 Cal.App.5th at pp. 826-827.) The district adopted a RON finding that the three public necessity elements and the MNPU element would be satisfied by the taking. (*Id*. at p. 827.) PG&E objected on various grounds, including (1) under section 1250.360, subdivision (f) that the district's taking was not for a more

21

necessary public use, and (2) under section 1250.370 that the public interest and necessity do not require the project. (*PG&E*, *supra*, at p. 827.) PG&E did not, however, challenge the RON under section 1245.255, which provides grounds for challenges to a RON, including that it was "'influenced or affected by gross abuse of discretion.'" (*PG&E*, *supra*, at p. 827; § 1245.255, subds. (a)-(b).)

After an appeal and remand, the trial court resolved the parties' dispute over the proper standard of review to apply at trial. (*PG&E*, *supra*, 95 Cal.App.5th at pp. 826-829.) The court ruled: "'PG&E may introduce additional evidence, out of the record of [the District]'s Resolution of Necessity proceeding, to attempt to disprove [the District]'s determinations that the four findings of public use and necessity have been established [citation]; and [¶] [t]he standard of judicial review is whether [the District] committed a gross abuse of discretion in adopting the Resolution by showing that there is a lack of substantial evidence to support the public use and necessity determinations.'" (*Id*. at p. 829.) The court also ruled that "'the applicable burden of proof standard for PG&E at the Right to Take trial is the preponderance of the evidence standard.'" (*Ibid*.)

The only issue the parties contested in an extraordinary writ proceeding in the Court of Appeal was the applicable standard of review at trial. (*PG&E*, *supra*, 95 Cal.App.5th at pp. 829, 832-838.) The court agreed with PG&E that PG&E did not have to show that the district's RON was a gross abuse of discretion or unsupported by substantial evidence. (*Id*. at p. 833.) Instead, PG&E only had to "prove that one of the

22

public necessity elements (§ 1240.030) or the more necessary public use element (§ 1240.610) is not true by the preponderance of the evidence." (*Ibid*.)

The court reached this conclusion based solely on its reading of the relevant statutes. (*PG&E*, *supra*, 95 Cal.App.5th at p. 833.) The court first noted that PG&E's only objections were brought under sections 1250.360 and 1250.370. (*PG&E*, *supra*, at p. 833.) PG&E objected under section 1250.360, subdivision (f), which is an objection that "may be raised 'regardless of whether the plaintiff has adopted a resolution of necessity.' (§ 1250.360)." (*PG&E*, *supra*, at p. 833.) PG&E also objected on several grounds under section 1250.370, which permits objections where "'the plaintiff has *not* adopted a resolution of necessity that *conclusively* establishes' the public necessity elements," which includes a RON concerning a public utility since the RON only *presumptively* establishes the public necessity elements. (*PG&E*, *supra*, at p. 833.) The Court of Appeal thus reasoned that *PG&E*'s objections were not challenges to a RON that "require[d] a showing of abuse of discretion or lack of substantial evidence." (*Ibid*.)

The *PG&E* court found that extraterritorial cases supported this conclusion. (*PG&E*, *supra*, 95 Cal.App.5th at p. 833.) The court observed that section 1245.250, subdivision (c), concerning extraterritorial takings, proscribes a rebuttable presumption that "affect[s] the burden of producing evidence." (*PG&E*, *supra*, at pp. 833-834.) Similarly, section 1245.250, subdivision (b), concerning public utility takings, also proscribes a rebuttable presumption that "affect[s] the burden of proof." (*PG&E*, *supra*, at pp. 833-834.) The *PG&E* court found that although these presumptions "are different,

23

they are also related," and there was no basis to conclude only the extraterritorial presumption allows "a substantive challenge to a public necessity element or the more necessary use element separate from challenging the validity of a resolution of necessity." (*Id*. at p. 834.) The court thus found "no reason for concluding that where the rebuttable presumption affects the *burden of producing evidence* the Legislature intended to allow the court to decide issues based on the evidence without deference to any relevant agency findings, but where the rebuttal presumption affects the *burden of proof* the Legislature intended that the court give the relevant agency findings deference." (*Id*. at p. 834.)

*PG&E* next concluded that substantial evidence review of the district's RON's findings would be "illogical and unworkable in combination with the rebuttable presumption and a burden of proof by a preponderance of evidence." (*PG&E*, *supra*, 95 Cal.App.5th at p. 834.) The court reasoned that a presumption is rebutted by contrary evidence, not the absence of evidence, while substantial evidence review considers only whether the prevailing party provided sufficient evidence to support a finding in its favor. (*Ibid*.)

The *PG&E* court then rejected the district's argument that PG&E's statutory interpretation, which the Court of Appeal adopted, would lead to absurd results. (*PG&E*, *supra*, 95 Cal.App.5th at p. 835.) The district contended that PG&E's position if accepted, would allow courts to "judicially veto" the district's decisions. (*Ibid*.) The Court of Appeal disagreed on the ground that the Legislature may make eminent domain

24

decisions "justiciable," and the legislative history of the 1992 amendments showed that is what the Legislature did with regard to public utility takings.  (*Ibid*.)

The *PG&E* court first noted that it found it unnecessary to review the legislative history because it found the relevant statutes unambiguous, but concluded that the legislative history supported its interpretation.  (*PG&E*, *supra*, 95 Cal.App.5th at p. 836.)  The court relied exclusively on the following statement from the GOPR (outlined above): "'Under current law, private utility owners simply do not have the ability to challenge the necessity of a public entity to take their property for the same public use.  This office believes that private property owners should have the right to legally challenge whether it is in the public's best interest to seize their property.'"  (*Ibid*.)  In the *PG&E* court's view, this supported the court's "understanding that, just as in extraterritorial condemnation cases, the Legislature had policy reasons for allowing greater judicial scrutiny over the decision to condemn."  (*Ibid*.)

The district pointed to Assemblymember Speier's unanimous consent statement outlined above as evidence that the 1992 amendments only changed the law to allow the introduction of extrinsic evidence (i.e., evidence outside the administrative record) in public utility takings trials.  (*PG&E*, *supra*, 95 Cal.App.5th at p. 837.)  The *PG&E* court rejected the argument because "it does not follow from the plain language of the statute," and Assemblymember Speier's statement that the amendments would not 'affect basic rights' is too vague . . . to understand."  (*Ibid*.)

Finally, the *PG&E* court rejected the district's argument that courts must defer to its quasi-legislative determinations, such as whether to take property. (*PG&E*, *supra*, 95 Cal.App.5th at p. 837.) The court reasoned that "the question of necessity can be made a judicial question" that is separate from the validity of a RON, as evidenced by extraterritorial cases, and "the Legislature has done just that in the context of public utilities." (*Ibid*.)

Because the trial court formulated the wrong standard of review to apply at trial, the *PG&E* court issued a writ directing the trial court to issue a new order consistent with the opinion. (*PG&E*, *supra*, 95 Cal.App.5th at pp. 837-838.)

B. *The Trial Court Applied the Wrong Standard of Review*

Liberty argues that *PG&E* confirms that the trial court here applied the right standard of review. We disagree. As TAV persuasively explains, there are several problems with *PG&E*'s analysis.

In our view, *PG&E*'s core shortcoming is its failure to acknowledge the fundamental differences between intraterritorial and extraterritorial takings. As pre-1992 case law that Liberty—but not *PG&E*—cites, extraterritorial takings raise different representative and constitutional concerns than do intraterritorial takings. (See e.g., *Keck*, *supra*, 14 Cal.App.3d at p. 925; *Wight*, *supra*, 221 Cal.App.2d at p. 761.) The decision to take property is a "fundamental political decision" (*ibid*.), which requires the condemning entity to consider and balance public policy concerns, use its expertise and superior knowledge of its jurisdiction, and weigh constituent concerns. (See *Western States*

26

*Petroleum Assn. v. Superior Court*, *supra*, 9 Cal.4th at pp. 569-573; *Keck*, *supra*, 14 Cal.App.3d at p. 925; *Dusek*, *supra*, 193 Cal.App.3d at pp. 258-260.)

Thus, a public entity's taking property within its borders is a quasi-legislative act that, when lawful, is a valid exercise of the entity's legislative discretion. (See *Dusek*, *supra*, 193 Cal.App.3d at p. 260.) A public entity's decision to take property outside of its borders, unless otherwise authorized, is not a valid exercise of its legislative power. (*Wight*, *supra*, 221 Cal.App.2d at pp. 760-761.)

*PG&E* did not grapple with these distinctions. Instead, it found that the plain language of the relevant statutes shows that PG&E could defeat the district's eminent domain action by showing that the taking is not for a more necessary public use (§ 1250.360, subd. (f)) or that the public interest and necessity do not require the taking (§ 1250.370, subd. (b)). (*PG&E*, *supra*, 95 Cal.App.5th at p. 819.)

True, but this does not speak to the applicable standard of review or deference courts should give to quasi-legislative decisions, such as a valid intraterritorial taking. As *PG&E* acknowledged, a RON "remains significant" when reviewing objections under sections 1250.360 and 1250.370 "because it impacts the burden at trial with respect to the public necessity elements." (*PG&E*, *supra*, 95 Cal.App.5th at p. 833.) The fact that objections under those statutes do not challenge the validity of a RON does not answer how courts should review a RON and its findings.

We thus disagree with Liberty that the gross abuse of discretion standard does not apply simply because its objections are under section 1250.360, subdivision (f) and

27

section 1250.370, subdivision (b), which are not necessarily challenges to the RON. It does not matter that these objections apply when a public entity has not adopted a RON or the RON is not given conclusive effect. As explained in more detail below, when, as here, the public entity has adopted a RON approving a public utility taking, the rebuttable presumption in section 1245.250, subdivision (b) applies. This requires the court to determine whether the party challenging the RON has rebutted the RON's presumptively correct findings that the public necessity elements are met—regardless of the statutory basis for the challenging party's objections.

As *PG&E* acknowledged, the only statutory language concerning the standard of review is the "rebuttable presumption" language in section 1245.250, subdivision (b) (concerning public utilities) and section 1245.250, subdivision (c) (concerning extraterritorial takings).[5] The presumption for public utilities "is a presumption affecting the burden of proof" while the presumption for extraterritorial takings "is a presumption affecting the burden of producing evidence."

Based on this similar language, *PG&E* saw "no reason why" the Legislature would let courts decide extraterritorial cases "without deference to any relevant agency

_____

[5] Again, section 1245.250, subdivision (b) states in relevant part: "If the taking is by a local public entity . . . and the property is electric, gas, or water public utility property, the resolution of necessity creates a rebuttable presumption that the matters referred to in Section 1240.030 are true. This presumption is a presumption affecting the burden of proof." Section 1245.250, subdivision (c) states in full: "If the taking is by a local public entity and the property described in the resolution is not located entirely within the boundaries of the local public entity, the resolution of necessity creates a presumption that the matters referred to in Section 1240.030 are true. This presumption is a presumption affecting the burden of producing evidence."

28

findings" while instructing courts to "give the relevant agency findings deference" in public utility cases. (*PG&E*, *supra*, 95 Cal.App.5th at p. 834.) Liberty likewise argues the language in subdivisions (b) and (c) of section 1245.250 is the same, and so it should be interpreted the same, meaning that the standards applicable to extraterritorial cases apply equally to public utility takings.

There are two problems here. First, the rebuttable presumption language in the two provisions is *similar*, but it is not the same. (*PG&E*, *supra*, 95 Cal.App.5th at p. 834 ["While a presumption affecting the burden of proof and a presumption affecting the burden of producing evidence are different, they are also related . . . ."].) We assume that if the Legislature wanted the same law to apply to extraterritorial and public utility takings, then it would have used the same language in sections 1245.360, subdivisions (b) and (c). Second, and more importantly, there is good reason to distinguish between extraterritorial takings and public utility takings: an extraterritorial taking, unless otherwise authorized, is not a valid legislative action, while an intraterritorial public utility taking is.[6]

_____

[6] For instance, section 1240.050 notes that a local public entity has the power to take property outside its boundaries only if "expressly granted by statute or necessarily implied as an incident of one of its other statutory powers." Local public entities therefore do not have a general power to condemn property outside their borders. Liberty notes that section 1240.125 authorizes local entities "to acquire property by eminent domain outside its territorial limits for water, gas, or electric supply purposes or for airports, drainage or sewer purposes if it is authorized to acquire property by eminent domain for the purpose for which the property is to be acquired." But, as TAV emphasizes, this case concerns a municipality's decision to condemn a water system located almost entirely within its borders, "*plus* a small, connected extraterritorial portion for which the Legislature has specifically authorized condemnation" under section 1240.125. The core of TAV's decision at issue here (condemning a water system within

29

*PG&E* fails to account for this critical distinction, particularly when addressing the district's separation of powers argument. *PG&E* is right that "the question of necessity can be made a judicial question by statute," as in extraterritorial cases. (*PG&E*, *supra*, 95 Cal.App.5th at p. 837.) But that does not answer how courts must resolve such a judicial question. Just because an eminent domain decision is justiciable does not mean courts need not defer to the public entity due to separation-of-powers considerations. (See *ibid*.) After all, section 1245.255 makes the validity of a conclusive RON justiciable "without undermining the historical deference accorded legislative determinations of necessity." (*Dusek*, *supra*, 193 Cal.App.3d at p. 255.)

*PG&E* nonetheless concluded that the 1992 amendments made public utility takings a judicial question that courts resolve without giving *any* deference to a public entity's findings underlying its eminent domain decision. We disagree.

What the legislative history of the 1992 amendments says *and does not say* provides helpful guidance on what the Legislature intended when enacting the public utility presumption. Assemblymember Speier's statement "commands respect" because she was granted unanimous consent by the Assembly to print it in the Assembly Journal. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 590; see also *Sierra Club v. California*

---

its borders) is thus a legislative act, while the rest of the decision (condemning the portions of the water system outside its borders) stems from a legislative grant of power (section 1240.125). So, if anything, section 1240.125 reinforces our conclusion that TAV's decision to condemn the water system at issue here is entitled to deference as a predominantly intraterritorial taking coupled with a statutorily authorized extraterritorial taking.

*Coastal Commission* (2005) 35 Cal.4th 839, 853, fn. 8.)  As she explained, the amendments made "a *procedural* change in how, under certain circumstances, the question of necessity and better public use is proven in eminent domain cases."  (Italics added.)  She explained that, when she presented the legislation to the Assembly, she "stressed . . . that this is a *procedural* change, evidentiary in nature . . . that does not affect basic rights *but only allows introduction of evidence on the subject of the presumption*."  (Italics added.)

In *PG&E*, the district argued this statement showed that the amendments only changed the law so that extrinsic evidence (i.e., evidence outside of the AR) was admissible, but the *PG&E* court dismissed the statement as inconsistent with "the plain language of the statute."  (*PG&E*, *supra*, 95 Cal.App.5th at p. 837.)  The court also found Assembly member Speier's statement about "'basic rights'" was "too vague to understand."  (*Ibid*.)

We agree with TAV that this statement "cannot be read in a vacuum."  We presume the Legislature knew of the existing case law when enacting legislation.  (*Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 118.)  We thus presume that, when enacting the 1992 amendments, the Legislature was aware of the preexisting precedent that courts give great deference to a public entity's eminent domain decision because it is a quasi-legislative act of a coequal branch of government.  (See e.g., *Dusek*, *supra*, 193 Cal.App.3d at pp. 258-260.)  We also presume that the Legislature knew courts generally do not give deference to extraterritorial eminent

31

domain actions unless otherwise authorized. (See e.g., *Grabowski*, *supra*, 205 Cal.App.3d at p. 893.)

But the legislative history of the 1992 amendments says *nothing* about this precedent, much less anything that reflects an intent to overrule it. In fact, there is no mention in the legislative history of the extraterritorial statutes, standards, or cases, much less any indication that this authority should apply in public utility takings. We have scoured the legislative history and have found nothing that suggests that, by enacting the 1992 amendments, the Legislature intended to so fundamentally alter the courts' role in reviewing eminent domain decisions concerning public utilities. If the Legislature had intended such a significant departure from decades of well-established case law, we presume it clearly would have said so. (See *County of Los Angeles v. Frisbie* (1942) 19 Cal.2d 634, 644; see also *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 502-504.)

But it did not. The Legislative history repeatedly acknowledges the "gross abuse of discretion" standard codified in section 1245.250. Yet, the Legislature did not touch it nor suggest that it should not apply in public utility condemnations after the 1992 amendments. Nor did the Legislature suggest that utility condemnations should be treated the same as extraterritorial takings.

Instead, the legislative history repeatedly states that the only change to the law would be to make the presumptions concerning the public necessity elements (§ 1245.250) and the MNPU element (§ 1240.650) rebuttable instead of conclusive. We

presume the Legislature understood that a conclusive presumption "'"'"is conclusive because the adverse party against whom it operates is *not permitted* to introduce evidence to contradict or rebut the existence of the presumed fact." [Citation.]'"' (*Homestead Savings v. Darmiento* (1991) 230 Cal.App.3d 424, 432, fn. 6.)  In fact, this principle is reflected in Assemblymember Speier's statement that the amendments would effect only "a procedural change, evidentiary in nature" that would "only allow[] introduction of evidence on the subject of the presumption."  Changing the presumption from a conclusive one that disallows extra-record evidence to a rebuttable one that permits extra-record evidence is fully consistent with the amendments' purpose of "allow[ing] private utility companies to challenge the decision of a public entity to take over the property for public operation and use."

This background gives important context to Assemblymember Speier's statement that the 1992 amendments would not "affect basic rights," which *PG&E* brushed aside as "too vague . . . to understand."  Again, we presume the Legislature was aware of then-existing case law holding that a public entity's eminent domain decisions are quasi-legislative acts entitled to great deference.  We can thus reasonably presume that this is among the "basic rights" the 1992 amendments were intended *not* to affect.  On the other hand, stripping a public entity's takings decisions of all deference certainly would "affect basic rights."

Ignoring this and other aspects of the legislative history, *PG&E* and Liberty focus on the GOPR's statement outlining its support for the 1992 amendments.  (*PG&E*, *supra*,

33

95 Cal.App.5th at p. 836.) They emphasize that the Office "'believes that private property owners should have the right to legally challenge whether it is in the public's best interest to seize their property'" and that then-current law did not allow private utility owners "'to challenge the necessity of a public entity to take their property for the same public use.'" (*Ibid.*)

But, like the rest of the legislative history, nothing in the statement suggests that the GOPR understood the 1992 amendments as overriding the historical deference given to a public entity's quasi-legislative eminent domain decisions. That office instead recognized that a conclusive presumption renders a decision "beyond dispute . . . and evidence to the contrary inadmissible," whereas a rebuttable presumption "may be rebutted or disputed by evidence," and, "if no or insufficient evidence is presented, the presumption stands." The GOPR thus understood that, in this case, the presumption "would favor . . . the public entity" and it was up to the challenger to present sufficient contrary evidence to rebut the presumption. So, if anything, the GOPR's statement supports TAV's argument that the 1992 amendments only changed the law so that extra-record evidence is admissible in public utility takings cases.

In any event, we give the GOPR's statement no weight. It was prepared by three staff members of the GOPR, an arm of the executive branch, and it recommended that the governor sign the legislation *after* it had already passed in the Legislature. We "do not infer legislative intent from a statement made by a nonlegislator *after* passage of the legislation." (*City of Hesperia v. Lake Arrowhead Community Services District* (2019)

34

37 Cal.App.5th 734, 758.) This is because statements made by executive branch staff on already-passed legislation "cannot reflect the intent of the Legislature." (*Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, 1492-1493.) *PG&E* and Liberty ignore this crucial principle when evaluating the legislative history.

*PG&E* also erred by finding the district's proposed standard of review, which is the same as TAV's, "illogical and unworkable." Like TAV, the district in *PG&E* argued that courts should review a public entity's decision to take a public utility for a gross abuse of discretion, which can be established by showing the decision lacks substantial evidence. (*PG&E*, *supra*, 95 Cal.App.5th at p. 834.) The *PG&E* court found this incompatible with the rebuttable presumption and a preponderance-of-the-evidence standard. (*Ibid.*) The court reasoned that the presumption and preponderance standard require the public utility owner challenging an eminent domain decision to prove that the private entity did not satisfy the four statutory prerequisites (public necessity elements and MNPU element) based on all of the evidence. (*Ibid*.) Substantial evidence review, in contrast, requires the reviewing court to determine whether any evidence supports the public entity's decision. (*Ibid*.)

This conflates the burden of proof with the trial court's standard of review. As explained above, the rebuttable presumption in section 1245.250, subdivision (b) (concerning public utility takings) imposes a burden of proof but says nothing about the judicial standards of review, such as a gross abuse of discretion or substantial evidence. And although the legislative history is replete with references to the burden of proof,

35

there is no mention of what the appropriate standard of review is for public utility takings.

Case law made clear before the 1992 amendments that courts review intraterritorial takings, whatever their nature, for a gross abuse of discretion. Yet, there is no indication in the amendments' legislative history that the Legislature intended to supplant that standard of review and replace it with a non-deferential standard of review that allows courts to independently review a public entity's quasi-legislative act of deciding to take a private utility. The Legislature "'would [not] have silently, or at best obscurely, decided so important and controversial a public policy matter and created a significant departure from the existing law." (*In re Christian S*. (1994) 7 Cal.4th 768, 782.) The Legislature does not "'hide elephants in mouseholes.'" (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1171.)

TAV persuasively proposes an approach that, in our view, better harmonizes the statutory language, legislative history, and relevant case law: "In utility-condemnation cases, the [public entity's] findings are presumed procedurally valid and presumed supported by substantial evidence, and a private utility must convince the trial court, using evidence outside the administrative record if necessary, that the resolution is procedurally invalid or that the [public entity's] findings are not supported by substantial evidence." This approach is consistent with the statutory language, comports with the longstanding deference courts give to quasi-legislative eminent domain decisions, and accounts for the Legislature's intent in enacting the 1992 amendments only to make a

"procedural change" to allow the admission of extra-record evidence in public utility takings cases.

For all of these reasons, we respectfully disagree with *PG&E* and decline to follow it here. In turn, we conclude the trial court applied the wrong standard of review.

C. *The Trial Court Erred by Refusing to Admit the AR, Failing to Use the RON as a Starting Point in its Analysis, and Improperly Applying the Rebuttable Presumption*

TAV argues that, regardless of what standard of review applies, the trial court made a series of related errors in applying the rebuttable presumption to the evidence that the court deemed relevant and admissible. TAV acknowledges that the trial court correctly recognized that section 1245.250, subdivision (b) imposes a rebuttable presumption that the RON's findings that the public necessity elements were met are true. But then, according to TAV, the trial court erred by (1) deeming the AR irrelevant, (2) not starting its analysis with the RON's findings and objectives and then requiring Liberty to rebut them, (3) allowing Liberty to present whatever evidence it wanted to meet its burden, and (4) failing to apply the rebuttable presumption altogether. We largely agree in all respects.[7]

_____

[7] We reject Liberty's contention that TAV forfeited its argument that the trial court failed to start with the RON's findings and objectives. This argument concerns the proper legal standards, which was a large focus of the parties' dispute below. We also reject Liberty's contention that TAV invited any error with respect to the trial court's use of post-RON evidence because TAV relied on post-RON evidence as well. TAV consistently argued that post-RON evidence was not relevant but, after the trial court ruled otherwise, TAV made "the best of a bad situation for which [it] was not responsible." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 213.)

37

The parties strenuously disputed before trial whether the AR should be admitted and considered by the trial court. Liberty argued the AR "has no place in th[e] proceeding" under the 1992 amendments. The trial court agreed and ruled that the AR was irrelevant and inadmissible, finding that "we don't need it."

The trial court erred. Regardless of which standard of review applied, section 1245.250, subdivision (b) imposed a rebuttable presumption in TAV's favor that TAV had satisfied the public necessity elements by adopting a RON which found that TAV's taking the water system would satisfy the public necessity elements. To successfully challenge TAV's eminent domain action, Liberty had to rebut those presumptively correct findings. Liberty necessarily could not do so unless the RON and its underlying findings/objectives in the AR were considered at the outset. Indeed, Liberty does not cite, nor can we find, any case challenging an administrative decision where the AR was properly found irrelevant and thus inadmissible.

The court's refusal to admit the AR was harmless, however, because TAV was allowed to admit all of the evidence from the AR that it wanted. Notably, TAV does not identify any evidence in the AR that the trial court did not admit and consider.

However, the trial court also erred for a different but related reason. The trial court found the AR irrelevant in large part because it ruled pre-trial that "[i]t [wa]s up to Liberty to decide what evidence it believes is relevant to meeting its burden of proof." Liberty thus recognized in its pre-trial briefing that the court ruled that "Liberty was free to decide what evidence to produce."

38

Even when courts need not defer to an administrative decision, they still "must afford a strong presumption of correctness concerning the administrative findings" and must find that the party challenging the administrative decision has proved findings "are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817, 824.) In this context, a court exercising its independent judgment when reviewing an administrative decision—like the trial court incorrectly did here—still must "begin its review with a presumption of the correctness of administrative findings, and then, after affording the respect due to these findings, exercise independent judgment in making its own findings." (*Id*. at p. 819.) In other words, a presumption that the administrative findings are correct, like the rebuttable presumption at issue here, "'provides the trial court with a starting point for review.'" (*San Diego Unified School Dist. v. Commission on Professional Competence* (2013) 214 Cal.App.4th 1120, 1141.)

"'[I]ndependent judgment' review" "'does not mean the preliminary work performed by the [agency] in sifting the evidence and in making its findings is wasted effort . . . . [I]n weighing the evidence the courts can and should be assisted by the findings of the board.'" (*Fukuda v. City of Angels*, *supra*, 20 Cal.4th at p. 812.) The trial court's SOD completely failed to apply these principles, irrespective of which standard of review applies. Liberty does not and cannot dispute that the SOD effectively ignores all of the RON's findings, objectives, and supporting evidence, and instead relies exclusively on Liberty's extra-record evidence. In doing so, the trial court rendered the rebuttable presumption in section 1245.250, subdivision (b) meaningless and "infected" the SOD's

findings with "fundamental error." (*Fukuda v. City of Angels*, *supra*, at p. 824.) Liberty ignored this issue entirely at oral argument in this court.

D. *The Trial Court Erroneously Relied on Post-RON Evidence*

The trial court's application of the wrong standard of review and its erroneous disregard of the rebuttable presumption was compounded by the nature of Liberty's evidence, which focused on Liberty's post-RON management of the water system. There are several problems with this approach.

First, when a public entity wants to condemn property, it must give the property owner notice and an opportunity to be heard. (§ 1245.235, subds. (a), (c).) And when a property owner-defendant answers an eminent domain complaint, the answer must "state the specific ground upon which the objection is taken and, if the objection is taken by answer, the specific facts upon which the objection is based." (§ 1250.350.) These statutes are consistent with the principle that public entities "are entitled to know at the outset whether the construction of a project will be placed at risk by a potentially meritorious challenge to the 'right to take.'" (*Grabowski*, *supra*, 205 Cal.App.3d at p. 894, fn. 5.) Liberty's answer necessarily could not state "the specific facts" underlying its objections insofar as they were based on their management of the water system in the years after TAV adopted the RON. Nor could Liberty's answer fairly advise TAV at the outset of the post-RON facts and developments that would form the basis of Liberty's case. In fact, Liberty's operative amended answer focused only on challenges to the RON with the TAV's resolution. Courts should not allow a party challenging an eminent

40

domain decision to base its defense exclusively on post-RON facts and developments that the party did not plead in its answer.

Second, the RON "is the fundamental predicate to the entire condemnation process." (*City of Stockton v. Marina Towers LLC* (2009) 171 Cal.App.4th 93, 107 (*Marina Towers*).) A RON is intended "to ensure that the public entity makes a careful and conscientious decision about the need for the project and the need for the property *before* it condemns private property." (*Id*. at p. 114.) As the trial court recognized before trial, *Marina Towers* shows that a "proposed project is considered in terms of that set forth in the [RON] because it is in that context findings of necessity are made and objections to the right to take are evaluated." (Italics added.) A RON would be meaningless if it "could be validated by post hoc events." (*Marina Towers*, *supra*, at p. 114.) A RON would likewise be meaningless (and a complete waste of public resources) if it could be invalidated with exclusively post-RON evidence without any consideration of its findings, objectives, and supporting evidence, as is the case here. No authority supports that approach.

Third, Liberty does not cite, nor can we find, any authority that supports the trial court's decision to rely wholly on post-RON evidence to find that Liberty met its burden. We are unaware of *any* case involving a mandamus action challenging an administrative decision, eminent domain or otherwise, holding that a party may successfully challenge the decision by relying entirely on events that arose after the decision was made. In the eminent domain context, in every case we can locate—whether involving intraterritorial

41

takings with conclusive presumptions or extraterritorial takings where no deference is due—courts focused on the circumstances existing when the public entity adopted its RON. (See e.g.*, Grabowski*, *supra*, 205 Cal.App.3d at pp. 890-891, 898-899; *Wight*, *supra*, 221 Cal.App.2d at pp. 758-764; *Keck*, *supra*, 14 Cal.App.3d at pp. 922-923, 926-927; *Marina Towers*, *supra*, 171 Cal.App.4th at pp. 107-108; *Dusek*, *supra*, 193 Cal.App.3d at pp. 258-260; *Izant*, *supra*, 37 Cal.App.4th at pp. 148-149; *Redevelopment Agency v. Rados Bros.*, *supra*, 95 Cal.App.4th at pp. 316-317; *City of Saratoga v. Hinz* (2004) 115 Cal.App.4th 1202, 1221-1227.) Notably, Liberty did not address this issue at oral argument in this court.

E. *The Trial Court Had the Authority to Remand to TAV*

TAV argued in its post-trial briefs that, if post-RON evidence is relevant, then the trial court should remand the matter to TAV so that it could consider that evidence in the first instance. The trial court declined, finding "nothing in the Eminent Domain Law that allows for such a remand."

But the trial court has the "inherent power, in proper circumstances, to remand to the agency for further proceedings prior to the entry of a final judgment." (*Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 527, 533-535.) We see no reason why this principle should not apply here. As a result, we conclude the trial court incorrectly found that it did not have the discretion to remand the case to TAV to consider Liberty's post-RON evidence in the first instance.

Liberty argues the trial court did not abuse its discretion in declining to remand the matter. But the trial court thought it had no such discretion when it did, and the "failure to exercise discretion is an abuse of discretion." (*Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 176.) This is another issue that Liberty did not address at oral argument. We need not decide whether the error was prejudicial, however, because we reverse and remand for other reasons. On remand, the trial court may reconsider whether to remand the matter to TAV for further proceedings.

F. *Prejudice*

For the reasons outlined above, the trial court erred in three principal respects: (1) it did not apply the gross abuse of discretion standard; (2) it did not properly apply the rebuttable presumption; and (3) it erroneously relied solely on post-RON evidence to find that Liberty met its burden. Taken together, these errors were prejudicial because it is reasonably probable that TAV would have obtained a better result had the errors not occurred. (See *Fukuda v. City of Angels*, *supra*, 20 Cal.4th at p. 824; *Mercury Ins. Co. v. Lara* (2019) 35 Cal.App.5th 82, 96.) We therefore reverse the judgment and the order awarding Liberty attorney's fees.

TAV asks us to reverse and remand with directions for the trial court to enter an order allowing the taking or, alternatively, with instructions to remand the matter to TAV. TAV argues a third option is to remand for a new trial. We believe the better approach is to remand to the trial court to exercise its discretion on how best to proceed in a manner consistent with this opinion.

43

IV.

DISPOSITION

The judgment and order awarding Liberty attorney's fees are reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. On remand, the trial court shall exercise its discretion and determine whether to (1) allow TAV to take the water system, (2) remand the matter to TAV for further administrative proceedings, or (3) hold a new trial and apply the appropriate burdens of proof and standard of review.  TAV may recover its costs on appeal.

CERTIFIED FOR PUBLICATION

CODRINGTON
J.

We concur:


McKINSTER
Acting P. J.


FIELDS
J.